**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Ruben F. SASNETT,**
**Defendant–Appellant.**

No. 89–4010.

United States Court of Appeals,
Eleventh Circuit.

March 4, 1991.

Thomas S. Keith, Asst. Federal Public Defender, Pensacola, Fla., for defendant-appellant.

Pamela A. Moine, Asst. U.S. Atty., Pensacola, Fla., for plaintiff-appellee.

Before JOHNSON and BIRCH, Circuit Judges, and MERHIGE *, Senior District Judge.

PER CURIAM:

A jury convicted Ruben Sasnett of DUI Manslaughter in violation of Section 316.-193, Florida Statutes, pursuant to the Assimilative Crimes Act, 18 U.S.C. §§ 7, 13. Thereafter, in accordance with the Sentencing Guidelines, the district court imposed a sentence of 60 months imprisonment, to be followed by a term of supervised release of three years. Although the district court determined that Mr. Sasnett did not have the then present ability to pay a fine or restitution, and therefore did not order either, it held that the issue of restitution could be reopened at a later date. Mr. Sasnett appeals both his conviction and the sentence imposed. For the reasons which follow, we affirm the conviction but remand the case for resentencing.

I.

BACKGROUND

A. *Facts*

At trial, the government presented evidence concerning appellant's involvement in a car crash that resulted in the death of one passenger, serious injury to another, and damage to property. The evidence established that on September 3, 1988, Sasnett and three other individuals drove to a creek located on the Eglin Air Force Base Reservation, property of the United States. They remained there for a time and then

* Honorable Robert R. Merhige, Jr., Senior U.S. District Judge for the Eastern District of Virginia, sitting by designation.

drove into a nearby town in order to purchase some liquor. After purchasing the liquor, appellant drove them back toward the creek on the Eglin Reservation. Although there was conflicting evidence at trial as to how much alcohol he and the others had had to drink, for the purposes of this appeal, Sasnett admits that he had a significant blood alcohol level at the time of the accident.

In his effort to get back to the creek, and while on government property, appellant drove upon an unpaved road. At the trial, there was conflicting testimony as to the speed at which he was driving. The range of speed given by a number of witnesses was between 35 and 45 miles per hour in a 35 mile per hour zone. There was also testimony that appellant was driving in the middle of the road.

At some point, the road started to gradually go up at a slight angle. As appellant's automobile approached this crest, a pickup truck being driven by Patrick O'Neal, a codefendant, came over the crest at a high rate of speed, and in the middle of the road. Some evidence at trial indicated that Sasnett had an opportunity to avoid the collision, which he failed to do, while other evidence showed that he had attempted some evasive action. The two vehicles collided practically head on. O'Neal's truck became airborne and landed off the side of the road. Sasnett's truck remained in the roadway.

As a result of the accident, one of the passengers in Sasnett's truck was killed. Another passenger in his vehicle sustained serious injuries to her face, a fractured right foot, and a fractured left wrist. The other passenger, as well as O'Neal and his passenger, sustained other, less serious injuries.

Following the collision, Sasnett was driven to his ex-wife's house by a person who had arrived at the scene. Although he asked that no call be made for an ambulance or to the police, emergency number 911 was called and assistance arrived shortly thereafter.

After being taken to the hospital, appellant was transported back to the scene of the accident by the Eglin Security Police. He was subsequently taken to the security office where he refused to submit to a breathalyzer test. He was then taken to a hospital where a blood sample was taken. A subsequent analysis of this blood revealed that it contained .24 grams of ethyl alcohol per 100 milliliters of blood. A government expert testified at trial that appellant would have had to have consumed approximately twelve beers in order to have a blood alcohol level of .24 at the time of the blood test, three hours after the accident. Officers who observed the appellant after the accident also testified that he appeared to be under the influence of alcohol.

## B. Legal Proceedings

On December 20, 1988, a four-count indictment was filed against the appellant and O'Neal, charging them with various offenses arising from the accident. Appellant was charged with involuntary manslaughter, DUI manslaughter (driving under the influence), driving with a suspended or revoked driver's license, and leaving the scene of an accident. Appellant moved to dismiss Count II, which involved DUI manslaughter, on the grounds that the government had improperly applied the Assimilative Crimes Act, 18 U.S.C. §§ 7, 13. The district court denied this motion.

Prior to the trial, appellant pled guilty to driving with a suspended license as charged in Count III. The government subsequently dismissed Count IV, leaving the scene of an accident.

On April 24, 1990, appellant proceeded to trial on the counts of involuntary manslaughter and DUI manslaughter. Both at the conclusion of the government's case, and at the conclusion of the appellant's case, appellant's counsel moved for a judgment of acquittal, which was denied by the court. The jury returned a verdict finding the appellant not guilty of involuntary manslaughter but guilty of DUI manslaughter.

Thereafter appellant was sentenced under the Federal Sentencing Guidelines.

The base offense level under the guidelines was determined to be 14. This was the level applicable to persons convicted of the federal crime of involuntary manslaughter, 18 U.S.C. § 1112, whose conduct was "reckless." The court rejected Sasnett's argument that the appropriate base level was 10.

The court also determined that there should be a two level upward adjustment on the grounds that the appellant obstructed, or attempted to obstruct, justice by leaving the scene of the accident and refusing to submit to the breathalyzer test as requested by law enforcement officers. The resulting total offense level was 16.

Appellant's criminal history category was determined to be Category II. With an offense level of 16 and a criminal history Category of II, appellant's guideline range for imprisonment was 24–30 months. Nevertheless, he was sentenced, on Count II, to 60 months imprisonment, to be followed by a term of supervised release of three years. As for Count III, driving without a license, he was sentenced to sixty days imprisonment to be followed by a term of supervised release of one year, all to run concurrent with the sentence on Count II.

The court's stated basis for the upward departure on Count II was its belief that the guidelines did not adequately take into account the physical injuries and property damage caused by the accident. The court did not cite any specific guidelines section or provision in determining the *extent* of the departure. Rather, the court merely stated that it "came to the conclusion, that five years is a pretty small price to pay for a death and to pay for all the injuries he [the appellant] caused, and I just came to a conclusion that it was an appropriate sentence."

## II.

## ANALYSIS

### A. *Denial of the Appellant's Motions*

#### 1. Motion to dismiss Count II

■ As discussed above, appellant unsuccessfully sought to have Count II of the indictment dismissed on the grounds that it was improperly charged under the Assimilative Crimes Act (the Act). He renews this claim on appeal. Because this is an issue regarding the proper interpretation of law, the standard of review by this Court is *de novo*. *Underwood v. Hunter*, 730 F.2d 614, 617 n. 6 (11th Cir.1984).

The Act, 18 U.S.C. § 13, states that:

Whoever within or upon any of the places now existing or hereafter reserved or acquired ..., is guilty of an act or omission which, *although not made punishable by any enactment of Congress*, would be punishable if committed or omitted within the jurisdiction of the State ... in which such place is situated, by the laws thereof in force at the time of such act or omission, shall be guilty of a like offense and subject to a like punishment.

It is generally understood that the purpose of the Act is to "fill the gaps in federal criminal law." *United States v. Brown*, 608 F.2d 551, 553 (5th Cir.1979), *citing United States v. Prejean*, 494 F.2d 495, 496 (5th Cir.1974). It is the law of the Eleventh Circuit that such a gap exists where "no act of Congress *directly* makes a defendant's conduct punishable." *Id.* Appellant contends that the involuntary manslaughter statute, with which he was charged, directly makes his conduct unlawful. Consequently, he maintains that the additional charge in Count II of Florida's DUI Manslaughter statute, was improper.

■ Federal law defines manslaughter as "the unlawful killing of a human being without malice." 18 U.S.C. § 1112. Involuntary manslaughter is manslaughter which occurs

[i]n the commission of an unlawful act not amounting to a felony, or in the commission in an unlawful manner, or without due caution and circumspection, of a lawful action which might produce death.

18 U.S.C. § 1112. The necessary elements of proof are: (1) that the defendant inflicted injuries upon the deceased from which

the deceased died; (2) that the defendant acted with wanton and reckless disregard for human life; (3) that the defendant was at the time committing an unlawful act not amounting to a felony; (4) that the defendant knew that his conduct was a threat to the lives of others or had knowledge of the circumstances as could have enabled him to reasonably foresee the peril to which his act might subject others; and (5) that it occurred within the special maritime or territorial jurisdiction of the United States. *United States v. Schmidt*, 626 F.2d 616 (11th Cir.1980), *cert. denied*, 449 U.S. 904, 101 S.Ct. 278, 66 L.Ed.2d 136 (1981).

▪ The Florida DUI Manslaughter statute provides in part that:

> (1) A person is guilty of the offense of driving under the physical control of a vehicle within this statute and; ... [t]he person has a blood alcohol level of 0.10 percent or higher.

Section 316.193, Florida Statutes (Supp. 1986). If a person driving under the influence causes the death of any human being, this is DUI manslaughter, a felony in the second degree. *Id.* The elements of proof required are (1) that the driver/defendant was under the influence in that his normal faculties were impaired or had a blood alcohol level above .10 and (2) that there was a "causal connection" between the operation of the vehicle by the offender and the resulting death. *Magaw v. State*, 537 So.2d 564 (Fla.1989). The government does not have to prove that the defendant's drinking caused the accident. It is only required that the operation of the vehicle caused the accident. *Id.* In fact, "any deviation or lack of care on the part of a driver under the influence to which the fatal accident can be attributed will suffice." *Id.* at 567.

▪ We are persuaded that this case is similar to others in which the "precise act" prohibited by the state statute is neither defined nor prohibited by a federal statute. *See United States v. Brown*, 608 F.2d 551, 554 (5th Cir.1979). In the *Brown* case this Court found that the defendant could properly be charged under a state child abuse statute even though her conduct could have

also fallen under the federal assault statute. *Id.* at 554. We believed that the precise act of injury to a child was not proscribed by federal law, and therefore the state statute was designed to punish specific conduct of a different character than that proscribed in the federal assault statute. *Id.*

As in *Brown*, the present case is one where the "precise act" of appellant, that of causing death while driving under the influence of alcohol, is not proscribed by federal law. *See United States v. Best*, 573 F.2d 1095, 1098 (9th Cir.1978). The fact that this act could also be punishable under a broader federal statute is not relevant. Appellant has been prosecuted under a state statute designed to punish specific conduct which is not specifically addressed by federal law. Consequently we believe that the government properly applied the Act when it charged appellant with the Florida DUI Manslaughter statute.

### 2. The Motion for Judgment of Acquittal

▪ In his motion for judgment of acquittal appellant maintained that the government failed to establish that any "deviation or lack of care" on his part caused the death of his passenger. In reviewing the denial of a motion for judgment of acquittal based on a challenge to the sufficiency of the evidence, this Court must

> view the evidence in the light most favorable to the government ... The jury's verdict must be sustained if any reasonable construction of the evidence allowed the jury to find the appellants guilty beyond a reasonable doubt ... The evidence may be sufficient even though it is not inconsistent with every reasonable hypothesis of innocence. The jury is free to choose among reasonable constructions of the evidence.

*United States v. Obregon*, 893 F.2d 1307, 1311 (11th Cir.1990).

Applying that test to this case, we note that the jury heard testimony from Pamela Hildebrand, a passenger in appellant's

automobile, that appellant was traveling 40 to 45 mph on a 35 mph road at the time of the accident. Furthermore, she testified that he was driving in the middle of the road and that although he had time to react, he took no evasive action. Patrick O'Neal, the driver of the other vehicle, also testified that at the time of the accident, appellant was driving on the wrong side of the road. This is ample evidence from which the jury could have concluded that appellant deviated from a reasonable standard of care. Therefore, we affirm the district court's denial of appellant's motion for acquittal and its submission of the case to the jury.

## B. *Sentencing Guidelines*

Appellant challenges his sentence on three grounds. First, he asserts that the district court erred in applying a base offense level of 14 to the DUI Manslaughter conviction. He also contests the upward departure from a guideline range of 24 to 30 months, to a sentence of 60 months. Finally, he asserts that the district court improperly left open the question of restitution for a later date. Our standard of reviewing these claims is well settled. The district court's factual findings in determining an appropriate sentence are reviewed only for clear error. 18 U.S.C. § 3742(d); *Adams v. Balkcom,* 688 F.2d 734, 739 (11th Cir.1982).

### 1. The Base Offense Level

Appellant argues that the district court incorrectly calculated his base offense level to be 14. The Federal Sentencing Guidelines provide that for involuntary manslaughter, the base offense level is 10 if the conduct was criminally negligent. U.S.S.G. § 2A1.4(a)(1). Subsection (a)(2), however, provides that the appropriate base offense level should be 14, if the conduct was reckless. U.S.S.G. § 2A1.4(a)(2).

The Guidelines state that

"Reckless" refers to a situation in which the defendant was aware of the risk created by his conduct and the risk was of such a nature and degree that to disregard that risk constituted a gross devi-

ation from the standard of care that a reasonable person would exercise in such a situation. The term thus includes all, or nearly all, convictions for involuntary manslaughter under 18 U.S.C. § 1112. *A homicide resulting from driving, or similarly dangerous actions, while under the influence of alcohol or drugs ordinarily should be treated as reckless.*

U.S.S.G. § 2A1.4, Application Note 1. By contrast, the term "criminally negligent" refers to conduct that involves a gross deviation from the standard of care that a reasonable person would exercise under the circumstances, but which is not reckless. Guidelines § 2A1.4, Application Note 2. It is further noted that crimes applied under the Assimilative Crimes Act will often involve criminally negligent conduct. *Id.*

Defendant contends that because he was acquitted of involuntary manslaughter under 18 U.S.C. § 1112, which requires reckless conduct, and convicted of DUI Manslaughter which only requires "any deviation or lack of care," his conduct should not have been classified as "reckless" for sentencing purposes. We are, however, of the opinion that the sentencing court was free to consider conduct for which appellant was acquitted. *United States v. Funt,* 896 F.2d 1288, 1300 (11th Cir.1990). Although the district court was authorized to make an independent determination at sentencing under the lesser standard of preponderance of the evidence, the court did not do so here. Rather, the district court's use of the reckless base offense level was predicated on a misunderstanding of the Florida law. The district court apparently believed that because the jury found appellant guilty of DUI manslaughter, that brought the case "clearly under [the] definition of reckless ..." because a conviction under the Florida statute "requires proof of reckless conduct...." This interpretation of the Florida statute is at odds with *Magaw v. State,* 537 So.2d 564, 567 (Fla.1989), in which the Florida Supreme Court held that the only proof required under the statute is "any deviation or lack of care". We are therefore of the

opinion that the case should be remanded to the district court for an independent determination as to whether appellant's conduct is properly classified as reckless or criminally negligent.

### 2. The Upward Departure

Although the district court may be compelled to reevaluate appellant's sentence in light of the above discussion, we consider it prudent to address appellant's argument concerning the upward departure on Count II.

The Guideline range of imprisonment on Count II, assuming a base offense level of 14, was 24–30 months. The district court departed above the guidelines and sentenced the appellant to sixty months imprisonment. In its remarks the court noted that

> there were special reasons for me to depart ... [i]n this case he went far beyond just drinking while under the influence ... he did more than cause that death, he caused multiple and bad injuries to various people who were in his car and otherwise and caused property damage, that it was in this range from minor lacerations to more serious injuries, and I think that in this case the guidelines don't adequately don't take into effect those matters that are in this case, I don't imagine the ones who wrote the guidelines anticipated that in a particular case of this kind that there would be all the harm and death, the physical injuries, conduct, and I think those are factors that I should take into consideration and I will enhance his sentence.

When asked by appellant's counsel as to what factors were considered in determining the *extent* of the departure, the court indicated that it had not considered any particular factors other than deciding that sixty months was "appropriate."

 A court may depart from a recommended guideline range if it "finds that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described." 18 U.S.C. § 3553(b); U.S.S.G. § 5K2.0. In reviewing an upward departure from the Guidelines, this Court must apply a three part test. The test is

> [f]irst, was the aggravating circumstance cited by the district court adequately taken into consideration by the Sentencing Commission in formulating the guidelines? Second, if adequate consideration was not give to the circumstance, was consideration of the circumstance consistent with the goals of the Sentencing Guidelines? If the circumstance was properly taken into account, was the extent of the departure from the guidelines range reasonable?

*United States v. Shuman*, 902 F.2d 873 (11th Cir.1990) (citations omitted). The appellant has admitted that the guideline for involuntary manslaughter, § 2A1.4, does not appear to take into account physical injuries sustained by persons other than the decedent, or property damage. He further admits that the Guidelines themselves indicate that physical injury and property damage are grounds for departure. *See* U.S.S.G. §§ 5K2.2, 5K2.5. His main contention, therefore, is that the extent of the departure was unreasonable. Given the type of personal injuries and property damage sustained as a result of appellant's wrongful conduct, we are not able to say that the extent of the departure was unreasonable. 18 U.S.C. § 3742(f). Therefore the upward departure is affirmed.

### 3. Postponed Determination of Restitution

Appellant's final challenge to his sentence regards the imposition of restitution. At the time of sentencing, the district court determined that appellant did not have the present financial ability to make restitution. However in light of the possibility that he could earn money in the future, the court stated that the issue of restitution could be reopened at such time as the appellant might begin earning money.

 There is no statutory or other provision that authorizes a sentencing court to leave the question of restitution open to an

uncertain date. In fact the wording of 18 U.S.C. § 3663[1] suggests that restitution must be ordered at the time of sentencing, and not thereafter. Consequently, the case will be further remanded to the district court for an immediate determination as to restitution, and resentencing on that basis.

### III.

In summary, we hold that the district court properly denied appellant's motion to dismiss Count II and motion for judgment of acquittal. As for the sentence imposed, we remand to the district court for an independent determination as to whether appellant's conduct was reckless or negligent within the definition of U.S.S.G. § 2A1.4. Further, that portion of the sentence which leaves open the possibility of restitution is vacated and we remand for an immediate determination as to the imposition of restitution.

AFFIRMED in part and REMANDED.

1. The statute provides that "[t]he court, *when sentencing a defendant* ... may order, in addition to or, ... in lieu of any other penalty authorized by law, that the defendant make restitution to any victim of such offense." 18 U.S.C. § 3663 (emphasis added).