**UNITED STATES of America, Plaintiff,**

v.

**Jocelyn DORVIL, Majeur Etienne, Georges Jean and Franckel Clotaire, Defendants.**

No. 91–0035–CR.

United States District Court, S.D. Florida.

Oct. 28, 1991.

Richard Boscovitch, Asst. U.S. Atty., Miami, Fla., for plaintiff.

Ken Lange, Miami Beach, Fla., for defendant Clotaire.

Patrick Hunt, Asst. Federal Public Defender, Miami, Fla., for defendant Dorvil.

Alberto Sarasua, Key Biscayne, Fla., for defendant Etienne.

Emmanuel Perez, Coral Gables, Fla., for defendant Jean.

## ORDER ON DISPUTED SENTENCING ISSUES

ATKINS, District Judge.

Defendants Jocelyn Dorvil, Majeur Etienne, Georges Jean and Franckel Clotaire (collectively "defendants"), who were convicted following a jury trial of various offenses relating to their possession and importation of cocaine into the United States, are now before the court for sentencing. Upon consideration of the evidence and the governing sentencing guidelines, the court determines the following: first, defendants are entitled to a four-level reduction for their minimal roles in the offenses, *see* Guidelines § 3B1.2(a) (West 1991); and second, a further downward departure is appropriate because minimal participation exists to a degree not contemplated by the guidelines, *see id.* § 5K2.0. In accordance with these determinations, defendants will be sentenced to concurrent terms of 120 months incarceration.

## I. OFFENSE CONDUCT

The relevant offense conduct as determined by the court for sentencing purposes can be summarized as follows. *See United States v. Sasnett*, 925 F.2d 392, 397 (11th Cir.1991) (recognizing that sentencing court may make independent factual determinations by preponderance of evidence). In January 1991, Job Serafin, owner of the vessel M/V Power Spirit, laid plans with Captain William Halsall–Aguillar (Halsall) and Chief Engineer Meade Archbold–Robinson (Archbold) to import some 227 kilograms of cocaine from Haiti into the United States. Defendants were hired in Haiti to work as crewmen aboard the vessel, which departed for the United States with defendants working under the direction of Serafin, Halsall and Archbold. While at sea, the vessel was approached by a small boat laden with sacks of cocaine, which defendants unloaded and stowed inside the vessel. At no time in Haiti or at sea were the defendants aware of the illegal nature of the voyage.[1]

---

**1.** The government offers evidence of several circumstances to show that defendants were aware

Upon arriving in Miami on January 12, 1991, the vessel came under the surveillance of the U.S. Customs Service. The following day, Customs officers boarded and searched the vessel and interviewed captain Halsall and chief engineer Archbold. Finding no contraband, Customs agents kept the vessel under surveillance. Finally, on the evening of January 16, the surveillance agents observed the defendants moving burlap bags from the vessel into vehicles which had been driven into the dock area. As one of the vehicles attempted to leave the area, the agents blocked the vehicle's exit and made their way to the dock area, where they arrested defendants. The two hundred and thirty seven (237) kilograms of cocaine were recovered.

Following a jury trial at which Captain Halsall and Chief Engineer Archbold testified for the government, defendants, along with Serafin, were convicted of four offenses: importation of cocaine, 21 U.S.C. §§ 952(a) & 960(a) (West 1991); conspiracy to import cocaine, *id.* § 963; possession with intent to distribute cocaine, id. § 841(a)(1); and conspiracy to possess with intent to distribute cocaine, *id.* § 846. Each of these statutory offenses calls for an incarceration range of ten (10) years to life, a fine of up to $4,000,000, and restitution. *See id.* §§ 960(b)(1)(B), 963, 841(b)(1)(A), 846. Based on the quantity of cocaine involved (237 kilograms), defendants' base-offense level is thirty-eight (38). *See* Guidelines § 2D1.1(a)(3) (West 1991) (providing for offense level of thirty-eight (38) for offenses involving between 150 and 500 kilograms of cocaine). The defendants continue to maintain their innocence and have refused to accept responsibility for the offenses. As defendants belong in criminal history category I, the presumptive guideline range based on an offense level of 38 is 235–293 months.

## II. DISCUSSION

### A. Minimal Participants

■ We first determine whether defendants are entitled to a four-level reduction for their minimal roles in the offenses. Section 3B1.2(a) provides for a four-level reduction where the "defendant was a minimal participant in any criminal activity." Guidelines § 3B1.2(a) (West 1991). Application note one to section 3B1.2 provides the following explanation:

> [The downward adjustment for minimal role] applies to a defendant who plays a minimal role in concerted activity. It is intended to cover defendants who are plainly among the least culpable of those involved in the conduct of a group. Under this provision, the defendant's lack of knowledge or understanding of the scope and structure of the enterprise and of the activities of others is indicative of a role as minimal participant.

*Id.* app. note 1. Application note two of section 3B1.2 states that the downward adjustment for a minimal participant should be "used infrequently," and that the reduction "would be appropriate, for example, for someone who played no other role in a very large drug smuggling operation than to offload part of a single marihuana shipment." *Id.* app. note 2.

Applying these standards to the facts of this case, we find that defendants were minimal participants within the meaning of section 3B1.2(a). Defendants had no understanding of the scope or structure of the undertaking and no knowledge of the cocaine until the offloading in Miami. They plainly are the least culpable of those involved in the offenses. The most culpable participant is Job Serafin, who concocted the importation attempt and organized its essential details. The next most culpable are Captain Halsall and Chief Engineer

of the cocaine before it was offloaded in Miami: Serafin's statement in Haiti to the effect of "don't worry about the crew, we've taken care of them"; the crew's participation in the transfer of the sacks of cocaine from the skiff to the ship; the close proximity between the crew's quarters and the alleged cocaine storage area; Clotaire's and/or Dorvil's involvement in the

counting of the sacks of cocaine as they were being stowed; and finally, the presence of approximately $3,000 dollars in the crew quarters. Based on the nature of the circumstances and the credibility of the testimony offered in support thereof, we decline to accept the government's contention that defendants were aware of the cocaine before arriving in Miami.

Archbold, who conspired on the docks in Haiti, lied to customs officials, arranged delivery on the Miami River, and sought insulation by directing the crew to unload the sacks of cocaine in their absence.[2] The least culpable defendants thus are defendants, who were hired merely as crewmen, were unaware of the cocaine until they arrived in Miami, lacked knowledge and understanding of the scope and structure of the enterprise, and had no proprietary interest in the cocaine.[3] Moreover, unlike Halsall and Archbold, defendants' participation in the operation was not critical to its success. Without the specialized, technical services of Captain Halsall and Chief Engineer Archbold, it is doubtful that the operation could have progressed as it did. By contrast, in defendants' absence Halsall, Archbold and Serafin could have transferred the cocaine from the skiff onto the boat; additionally, the three of them, with the help of Fritz and Brizzard, certainly could have moved the cocaine from the vessel to the delivery vehicles. *Cf. United States v. Garcia,* 920 F.2d 153, 154 (2d Cir.1990) (finding defendant unentitled to downward reduction primarily because "without [defendant's] conduct there was no deal").

Based on the nature of defendants' roles and the hierarchy of responsibility, the court determines that defendants are minimal participants within the meaning of section 3B1.2(a). *See United States v. Smith,* 918 F.2d 1551, 1566 (11th Cir.1990) (recognizing that defendant's entitlement to reduction for minor or minimal status depends on such considerations). According-

ly, the court will grant Dorvil, Etienne, Jean and Clotaire minimal status and accompanying four-level reductions. Their offense levels thus initially will be reduced from a 38 to a 34. Having made this determination, we turn to the remaining issue: whether a further downward departure pursuant to Guidelines § 5K2.0 is appropriate.

### B. Downward Departure Based on Factors not Adequately Considered by Sentencing Commission

A district court may depart from a recommended guideline range if it finds " 'that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described.' " Guidelines § 5K2.0 (West 1991) (quoting 18 U.S.C. § 3553(b)); *accord United States v. Sasnett,* 925 F.2d 392, 398 (11th Cir.1991) (involving upward departure); *see United States v. Birchfield,* 709 F.Supp. 1064, 1068 (M.D.Ala.1989) (holding that standard for upward departure governs downward departure). Defendants offer two mitigating circumstances which they allege were inadequately considered by the Sentencing Commission and should result in downward departures: a jury note requesting leniency and the minimal nature of defendants' roles.

### 1. The Note

The first mitigating circumstance advanced by defendants as a ground for downward departure pursuant to section

---

**2.** The government contends that Halsall and Archbold, not the defendant crewmen, are the least culpable participants. It contends that although the captain and chief engineer occupied roles generally thought to be positions of responsibility, they were reluctant participants who worked at the direction of Serafin. We find this characterization of the captain's and chief engineer's roles, and the concomitant hierarchy of culpability, wholly without merit. The credible evidence shows that the captain and chief engineer conspired in Haiti, lied to Customs officials, arranged delivery on the Miami River, and sought insulation by directing the crew to unload the sacks of cocaine in their absence. Indeed, the probation officer assigned to this case describes the government's portray-

al of the chief engineer's and captain's roles as "unusual." *See* Dorvil's Presentence Report at para. 12.

**3.** The third most culpable group, falling between the captain and chief engineer and the defendants, would probably include Eddy Brizzard and Jean Pierre Fritz, who fled before trial and remain fugitives. Although relatively little evidence was presented regarding their involvement, the facts that Brizzard drove a delivery vehicle and thus had ties to the recipients of the cocaine, and that Fritz was personally linked to Serafin, suggest relatively significant levels of involvement on their part.

5K2.0 is a note sent out by the jury during its deliberations on June 2, 1991. In relevant part, the note read as follows:

> We have a verdict on the following defendant[s]: Jocelyn Dorvil ... Marjeur Etiene [sic] ... Georges Jean ... Job Serafin ... Franckel Clotaire....

> We the jury request leniency on the sentence to the following defendant[s]: Jocelyn Dorvil ... Marjeur Etiene [sic] ... Georges Jean ... Franckel Clotaire.

Transcript of Hearing on Verdict at 3. Defendants urge that this "specific and unsolicited recommendation of leniency by the jury is exactly the type of mitigating circumstance that the Sentencing Commission did not ... anticipate[ ] in formulating the sentencing guidelines." Dorvil's Position With Respect to Sentencing Factors at 7.

We agree that the Sentencing Commission neither addressed nor anticipated this mitigating circumstance in formulating the guidelines. However, we cannot base a downward departure on the note, as doing so would be inconsistent with the goals of the Sentencing Guidelines. *See Sasnett*, 925 F.2d at 398 (holding that court may not depart based on inadequately considered circumstance if court's consideration of circumstance would be inconsistent with goals of guidelines). The purpose of the guidelines is "to rationalize the sentencing process by, among other things, promoting *'uniformity* in sentencing by narrowing the wide disparity in sentences imposed by different federal courts for similar conduct by similar offenders.'" *United States v. Fayette*, 895 F.2d 1375, 1381 (11th Cir.1990) (quoting Guidelines § 1A3 at 1.2 (policy statement)) (emphasis in guidelines). Departing from a recommended sentencing range on the basis of a jury's request for leniency, however well-founded, would not serve the purpose of rationalizing the sentencing process. Instead, it would "risk[ ] a return to the wide disparity [in sentencing] that Congress established the Commission to limit." *Id.* (quotation omitted). Thus, we are precluded from departing on the basis of the jury note.

### 2. Exceptionally Minimal Participation

The second mitigating circumstance offered by defendants in support of a downward departure is the exceptionally minimal nature of their participation in the offenses. The Sentencing Commission's provision of guided departures based on a defendant's minor or minimal role, *see* Guidelines § 3B1.2, suggests the Commission's having given significant consideration to such a mitigating circumstance. However, as noted earlier, section 5K2.0 authorizes departure not only where there exists a mitigating circumstance "of a kind" not adequately considered by the Commission, but also where a mitigating circumstance exists "to a degree" not adequately considered by the Commission. *See id.* § 5K2.0; *Sasnett*, 925 F.2d at 398. The Commission's policy statement elaborates as follows:

> [T]he court may depart from the guidelines, *even though the reason for departure is taken into consideration in the guidelines (e.g., as a specific ... adjustment )*, if the court determines that, in light of unusual circumstances, the guideline level attached to that factor is inadequate.

Guidelines § 5K2.0 policy statement (emphasis added). The defendants essentially argue that the guideline level attached to their minimal roles, i.e., a four-level downward departure, is inadequate in light of the magnifying effect the amount of cocaine has on their offense level.

In support of their argument, defendants offer the Second Circuit's recent opinion in *United States v. Restrepo*, 936 F.2d 661 (2d Cir.1991). In *Restrepo*, the defendants pled guilty to a money laundering offense, *see* 18 U.S.C. § 1956(a)(1)(A)(i) (1988), i.e., knowingly off-loading boxes containing $18 million in cash proven to be proceeds of drug trafficking. Based in part on the amount of money involved, the defendants' offense level was calculated to be twenty-nine (29), even after they had received a four-level reduction for minimal participation. At sentencing, the district court departed downward an additional four levels on the ground that the defendants, min-

imal involvement was not accounted for in the guidelines. *See Restrepo,* 936 F.2d at 663–65. In affirming the district court's downward departure, the Second Circuit concluded that where "an offense level has been extraordinarily magnified by a circumstance that bears little relation to the defendant's role in the offense, a downward departure may be warranted on the ground that minimal participation exists to a degree not contemplated by the guidelines." *Id.* at 667. Thus, while a guided departure pursuant to section 3B1.2 "should adequately address most small players in a large criminal enterprise," such a departure "does not address the spiralling effect that the amount of cash had on these defendants, particularly in light of its assumed link with their role in the enterprise." *Id.* at 668.

We find the rationale articulated in *Restrepo* persuasive in the present case. Even after Dorvil, Etienne, Jean and Clotaire's offense level is adjusted for their minimal participation, the applicable level, tethered as it is to cocaine amount, does not adequately reflect the minimal nature of their roles. *See id.;* Guidelines § 5K2.0 policy statement. Consequently, the mitigating circumstance of their minimal participation exists " 'to a degree[ ] not adequately taken into consideration by the Sentencing Commission in formulating the guidelines,' " *id.* (quoting 18 U.S.C. § 3553(b)); *see Sasnett,* 925 F.2d at 398. We also find "that [this minimal participation] should result in a sentence different from that described [by the guidelines]," Guidelines § 5K2.0 policy statement (quoting 18 U.S.C. § 3553(b)). Stated differently, we conclude that departing on the basis of the defendants' unusually minimal offense participation is consistent with the goals of the Sentencing Guidelines. *See Restrepo,* 936 F.2d at 667–68; *Sasnett,* 925 F.2d at 398; *Birchfield,* 709 F.Supp. at 1070; 18 U.S.C. § 3553(a)–(b).

### 3. Extent of Departure

Having concluded that a downward departure pursuant to section 5K2.0 is appropriate, we determine that a departure of approximately two levels, to a minimum mandatory sentence of 120 months, is ap-

propriate. *See Sasnett,* 925 F.2d at 398 (holding that unguided downward departure must be reasonable); *cf. Restrepo,* 936 F.2d at 668 (finding reasonable four-level downward departure); Guidelines § 3B1.2 (providing successive two-level reductions for minor and minimal participants).

### III. CONCLUSION

For the foregoing reasons, it is OR-DERED AND ADJUDGED as follows: (1) based on their minimal participation in the offenses, the defendants—Dorvil, Etienne, Jean and Clotaire—receive four-level reductions pursuant to Guidelines § 3B1.2(a) (lowering offense level from 38 to 34); (2) because minimal participation exists to a degree not contemplated by the guidelines, a further downward departure of approximately two levels is appropriate pursuant to Guidelines § 5K2.0; and (3) in accordance with these determinations, defendants Dorvil, Etienne, Jean and Clotaire will be sentenced to concurrent terms of 120 months incarceration.

DONE AND ORDERED at Miami, Florida, this 22nd day of October, 1991, *nunc pro tunc* September 13, 1991.