**UNITED STATES of America**

**v.**

**Anthony MIRANDA.**

**No. CRIM. 96–445.**

United States District Court,
D. New Jersey.

Sept. 26, 1997.

Faith S. Hochberg, United States Attorney, Mark J. McCarren, Assistant United States Attorney, Newark, NJ, for the United States of America.

Michael W. Kahn, Baker, Iahn & Shields, Voorhees, NJ, for Anthony Miranda.

## OPINION

ORLOFSKY, District Judge.

This case requires this Court once again to plumb the murky depths of the United States Sentencing Guidelines ("U.S.S.G." or the "Guidelines") and address the question of

whether horrific pretrial conditions at a county jail housing a federal prisoner provide a basis for departure under the Guidelines.

On August 8, 1997, Defendant, Anthony Miranda ("Miranda"), pled guilty to Count 1 of a two-count indictment charging the Defendant and a number of co-conspirators with a violation of 21 U.S.C. § 846, that is, knowingly and intentionally conspiring to violate 21 U.S.C. § 841(a)(1), *i.e.*, to distribute and possess with intent to distribute more than five kilograms of cocaine.

Miranda, the Government, and the Probation Officer in the Presentence Investigation Report ("PSR") have identified a number of sentencing issues which this Court must rule upon in order to calculate the applicable sentencing guidelines range. Finding no potential violation of the Ex Post Facto clause of the Constitution because none of the Guidelines involved in this case have changed since the date of the offense which might yield a harsher result, the Court will apply the Guidelines in effect at the time of sentencing. *See* U.S.S.G. § 1B1.11; *United States v. Brannan,* 74 F.3d 448, 450 nn. 1–2 (3d Cir. 1996).

## I. Discussion

### A. Base Offense Level

Because the amount of cocaine involved in the offense was greater than 50 kilograms and less than 150 kilograms, the offense carries a base offense level of 36. *See* U.S.S.G. § 2D1.1(c)(2).

### B. Acceptance of Responsibility

While the Court is not bound by the terms of the parties' plea agreement, *see, e.g.,* U.S.S.G. § 6B1.4(d); *United States v. Forbes,* 888 F.2d 752, 754 (11th Cir.1989), the Court sees no basis for disputing the 3–point downward adjustment for Miranda' acceptance of responsibility. Pursuant to U.S.S.G. § 3E1.1(a) (clear demonstration of acceptance of responsibility) and § 3E1.1(b)(2) (timely notification of intention to enter a plea of guilty where base offense level is greater than 16 prior to application of § 3E1.1(a)), Miranda's offense level shall be adjusted to 33.

### C. Exceptionally Minimal Role/Minimal Participant/Minor Participant

In the plea agreement, Miranda and the Government stipulated that Miranda was a "minor participant" and therefore, pursuant to U.S.S.G. § 3B1.2(b), entitled under the agreement to a 2–point adjustment. Miranda has now moved for an additional downward departure under U.S.S.G. § 5K2.0 claiming that the Guidelines do rot "adequately reward him for his exceptionally minimal role in the conspiracy," Defendant's Letter Brief at 5 (dated Sept. 12, 1997). In the alternative, Miranda moves for a four-point reduction under U.S.S.G. § 3B1.2(a) for his "minimal role" in the offense. The PSR found that Miranda was entitled to no additional downward departure under any guideline, §§ 3B1.2(a), 3B1.2(b), or 5K2.0.

While the Court may grant a downward departure pursuant to both sections, *see, e.g., United States v. Stuart,* 22 F.3d 76, 83 (3d Cir.1994) (adopting reasoning of *United States v. Restrepo,* 936 F.2d 661 (2d Cir.1991) in applying U.S.S.G. § 2S1.1), the Court declines Miranda's invitation to depart downwardly under section 5K2.0 or section 3B1.2(a). Instead, the Court will not disturb the Government and Miranda's agreement to a 2–point reduction for Miranda's minor role under section 3B1.2(b).

The Application Notes to U.S.S.G. § 3B1.2 indicate that a downward adjustment for a minimal participant is to be used infrequently and for those who, for example, "played no other role in a very large drug smuggling operation than to offload part of a single . . . shipment, or in a case where an individual was recruited as a courier for a single smuggling transaction involving a small amount of drugs."

The Court finds that Miranda's conduct was less culpable than most other participants in the conspiracy, but cannot be described as minimal. While Miranda's Letter–Brief attempts to portray him as having played roles like those of the defendants in *Restrepo* (packer and loader), *United States v. Dorvil,* 784 F.Supp. 849 (S.D.Fla.1991) (offloader), and *United States v. Alba,* 933 F.2d 1117 (2d Cir.1991) (transporter who had no stake in or knowledge of transaction), the

facts suggest than his participation was more integral, more knowing, and more necessary to the success of the drug venture.

Unlike the "workhorse"-type defendants in *Restrepo* and *Dorvil,* who likely could easily have been replaced, Miranda played a more indispensable role in the conspiracy and had a financial stake in the venture. In terms of his function, he did more than merely transport the drugs, a task in which he certainly participated, Miranda also knowingly provided at least part of the money necessary to pay the freight charges for the transport of the drugs from California to New Jersey. He also permitted the drugs to be stored in his company's warehouse before they were to be transported.

In terms of his knowledge, Miranda participated in at least the second car trip with Sarria, a day after the first trip, in order to pick up cocaine which was to be transported to New Jersey. At that time, he knew that it was cocaine that was to be picked up. Miranda also partially paid for the cocaine to be shipped to New Jersey, knowing full well that it was cocaine he was helping to send across the country. Finally, even if he were not being paid for his actions in furtherance of the conspiracy, Miranda certainly had a financial interest in being paid the $4,300 debt he was owed by Ochoa which provided him with an interest, albeit limited, in seeing the conspiracy succeed.[1]  *See, e.g., United States v. Haut,* 107 F.3d 213, 217 (3d Cir.) (defendants did not receive any benefit from offense, committed), *cert. denied,* —— U.S. ——, 117 S.Ct. 2528, 138 L.Ed.2d 1028 (1997).

Despite this participation in the conspiracy, Miranda's role can fairly be described as minor. Temporally, he was involved in the conspiracy for a relatively shorter period of time than his co-conspirators. His interactions with co-conspirators were limited to Ochoa, Sarria, and, to a much lesser Extent, Montoya. He had in apparently legitimate

business relationship with Ochoa which predated the conspiracy. Also, he was not involved in the receipt and, presumably, distribution of the drugs in New Jersey. For these reasons, the Court will accept the stipulation incorporated in the plea agreement relating to Miranda's minor role. Therefore, Miranda's offense level shall be further adjusted to 31.

### D. Family Circumstances

■ Miranda has also made a motion for a downward departure based upon extraordinary family circumstances. The Government opposes this ground for a departure. As section 5H1.6 notes, "family ties and responsibilities ... are not ordinarily relevant to determining whether a sentence should be outside the applicable guideline range." As the First Circuit has indicated, "at some point, the nature and magnitude of family responsibilities (many children? with handicaps? no money? no place for children to go?) may transform the 'ordinary' case .... into a case that is not at all ordinary." *United States v. Rivera,* 994 F.2d 942, 948 (1st Cir. 1993).

Miranda has submitted information regarding his 17 year old daughter, Neryvanessa, who was diagnosed with a brain tumor in 1980. Her doctor reports that she progressed well after her surgery, which occurred several years ago, but that she requires regular follow-up in order to monitor the health of her brain. Some erratic behavior and learning disabilities have resulted. Miranda's son, Christopher, age 13, is also currently exhibiting unspecified disciplinary problems.

The Court finds that the situation described by Miranda does not transform this case into the category of extraordinary situations. Unlike the cases cited by Miranda, Miranda's daughter does not require constant medical care at home. *See, e.g., United*

---

1. The facts: (1) that Miranda allowed the drugs to be stored in his warehouse at least overnight, if not longer; and (2) that part of his reason for not renouncing the conspiracy after learning about the drugs was to ensure Ochoa's payment of the $4,300 debt belie the notion that Miranda's actions were a product of some sort of coercion, let alone the "serious coercion" required by the

Guidelines. *See* U.S.S.G. § 5K2.12 (noting that "[o]rdinarily coercion will be sufficiently serious to warrant departure only when it involves a threat of physical injury, substantial damage to property, or similar injury"); Defendant's Letter Brief at 3 (noting fear of making Ochoa "angry"); *see e.g., United States v. Bissell,* 954 F.Supp. 841, 897–98 (D.N.J.1996).

*States v. Spedden,* 917 F.Supp. 404 (E.D.Va. 1996) (defendant was only one who could care for dying wife and seriously ill child); *United States v. McGee,* 802 F.Supp. 843 (E.D.N.Y. 1992). Also, unlike the situation in *United States v. Gaskill,* 991 F.2d 82 (3d Cir.1993), which specifically noted "the degree of care required for the defendant's wife, the lack of close supervision by any family member other than the defendant, and the risk to the wife's well being," *id.* at 86, Miranda is not the sole means of support for his two children and wife. Miranda's wife, Marlyn, is employed and no evidence has been presented to suggest that she is unable to care for the children. *See, e.g., United States v. Johnson,* 964 F.2d 124, 129 (2d Cir.1992) (defendant was solely responsible for the upbringing of her three young children, including an infant, and of the young child of her institutionalized daughter); *United States v. Headley,* 923 F.2d 1079, 1082 (3d Cir.1991) (noting psychological impact that imprisonment of single mother would have on five children below age of eleven); *United States v. Goff,* 907 F.2d 1441, 1446 (4th Cir.1990) ("[defendant] has shown nothing more than that which innumerable defendants could no doubt establish: namely, that the imposition of prison sentences normally disrupts … parental relationships"); *United States v. Artim,* 944 F.Supp. 363, 369–70 (D.N.J.1996) ("[defendant's] family ties and responsibilities are not so great as in cases where a defendant is a single parent who is the sole caretaker for young children"); *United States v. Frangione,* 1994 WL 178521, \*3–\*4 (E.D.Pa.1994) (noting that single parent not presumptively entitled to "family circumstances" downward departure). Finally, behavioral problems exhibited by 13 year old boys are not sufficiently extraordinary such that a downward departure is warranted.

### E. Criminal History Category

The Probation Officer determined Miranda's criminal history category to be Category III based on a calculation of 5 criminal history points. *See* U.S.S.G. § 4A1.1. Miranda was arrested for driving under the influence of alcohol ("DUI") in California in 1988 and sentenced to two days imprisonment and three years probation. About four years later, Miranda pled guilty to driving without a license and was sentenced to one year of probation and a small fine. Finally, in October, 1994, Miranda was sentenced to thirty days imprisonment and sentenced to three years of probation for another DUI offense.[2] Each of these offenses counted for 1 criminal history point under section 4A1.1(c). Because the offense to which Miranda is being sentenced today, *i.e.,* the violation of 21 U.S.C. § 846, in the parlance of the Guidelines, the "instant offense," was committed while Miranda was still on probation for the 1994 DUI offenses, 2 points are added, for a total of 5 criminal history points. *See* U.S.S.G. § 4A1.1(d).

Miranda has made a motion for a downward departure pursuant to section 4A1.3 claiming that a criminal history category of III over-represents the seriousness of Miranda's criminal history or the likelihood that he will commit further crimes. The Government has not taken a position in response to Miranda's motion. The Court agrees with Miranda.

The Policy Statement which comprises section 4A1.3 provided an example of a situation in which a criminal history category does not adequately represent the seriousness of conduct or the likelihood of recidivism: "An example might include the case of a defendant with two minor misdemeanor convictions close to ten years prior to the instant offense and no other evidence of prior criminal behavior."

Miranda's situation fits into the category of cases embraced by the Policy, which, is the authoritative guide for the application of section 4A1.3. *See, e.g., United States v. Hickman,* 991 F.2d 1110, 1113 n. 7 (3d Cir.1993). While driving under the influence of alcohol is a serious offense with potentially serious consequences, the Court finds that Miranda's 1988 DUI conviction is remote enough in time from the instant offense and sufficiently distinct in seriousness and kind from the instant offense, such that it should not be

---

2. Pursuant to U.S.S.G. § 4A1.2(c) and Application Note 5, the DUI convictions were properly counted. Because the "driving without a license" offense resulted in a probationary sentence of at least one year, it was also properly counted. *See* U.S.S.G. § 4A1.2(c).

included in calculating Miranda's criminal history category. Similarly, Miranda's driving without a license conviction, a non-serious offense, which occurred approximately four years prior to the instant offense, is remote enough in time and sufficiently distinct in seriousness and kind from that the instant offense, such that it should also be excluded in calculating Miranda's criminal history category. *See, e.g., United States v. Valencia–Andrade,* 72 F.3d 770 (9th Cir.1995) (finding that driving with suspended license resulted in over-statement of criminal history); *United States v. Shoupe,* 988 F.2d 440, 446–47 (3d Cir.1993) adopting approach of *United States v. Pinckney,* 938 F.2d 519 (4th Cir.1991); *United States v. Summers,* 893 F.2d 63 (4th Cir.1990).

Moreover, the Court believes that the inclusion of Miranda's 1994 DUI conviction, although committed while on parole, should not be included in calculating the criminal history category. Additionally, at oral argument, the Government conceded, and the Court agrees, that a criminal history category of I was not inappropriate.

Accordingly, in calculating the sentence applicable to Miranda, the Court will subtract 5 points from his previous point total of 5, for a total of zero criminal history points, *see Hickman,* 991 F.2d at 1114 (noting that court should move "horizontally," use guideline range for a defendant with a higher or lower criminal history category, as applicable); *United States v. Taylor,* 843 F.Supp. 38, 48 (E.D.Pa.1993), and therefore, the Court will use a criminal history category of I in imposing sentence.

### F. Pretrial Conditions

Relying on a growing trend of decisions within this district, which have yet to be reviewed by the Third Circuit, *see, e.g., United States v. Sutton,* 973 F.Supp. 488, 494–95 (D.N.J.1997) (finding authority to downwardly depart based on atypical conditions of pretrial confinement, but adding that "us[e] of ... departures to foment prison administrative reform is awkward and far removed from aim of the ... Guidelines") (Bassler, J.); *United States v. Booher,* 962 F.Supp.

629, 636 (D.N.J.1997) (declining to downwardly depart due to deplorable prison conditions because, among other reasons, relief from such conditions is available through other means) (Politan, J ), Miranda also moves for a downward departure based on the 100 days during which he was incarcerated at the Camden County Correctional Facility ("CCC"). In a letter to the Court, Miranda noted in brief, but graphic detail the conditions of his confinement. Neither the Probation Officer, nor the Government have not taken written positions in response.

■ Assuming, *arguendo,* that the Court may even consider the conditions of pretrial confinement as a basis for a downward departure, regardless of whether such a factor is a "discouraged" factor or a factor "unmentioned" by the Sentencing Commission,[3] *see Koon v. United States,* —— U.S. ——, ——, 116 S.Ct. 2035, 2045, 135 L.Ed.2d 392, 410–11 (1996) (dividing factors into four classes, forbidden, encouraged, discouraged, and unmentioned), the confinement at issue in this case and on this minimal record regarding CCC's conditions would not warrant a departure. Miranda was in CCC only 100 days, as compared to the defendant in *Sutton,* who spent slightly less than a year in the Union County Jail, *Sutton,* 973 F.Supp. at 491–92, the defendant in *Booher,* who spent three years in the Union County Jail, *Booher,* 962 F.Supp. at 629, 636 (noting that length of stay was of [defendant's] own making), and the defendant in *United States v. Navarro,* Crim. No. 93–538, slip op. at 3 (D.N.J. Nov. 18 1996) (Lifland, J.) (noting importance of length of time incarcerated in Union County jail as factor in decision to grant downward departure), who spent 32 months in the Union County Jail, *id.* at 3. *See also United States v. Arenas–Anzola,* Crim. No. 97–76 (D.N.J. June 1997) (six-month stay not enough to warrant departure) Debevoise, J.; *United States v. Gi Hun Jen,* Crim. No. 93–289 (D.N.J. Sept. 23, 1996) (declining, in oral ruling, to depart to account for 40–month stay) (Parell, J.); *see also United States v. Porter,* 924 F.2d 395, 399 (1st Cir.1991) (de-

---

**3.** In light of the split of authority within this district, the Court makes this assumption with a great degree of trepidation and without having

exhaustively treated the issue herein. As I point out, however, regardless of the answer, Miranda would not be entitled to a departure.

clining to review district court decision not to depart based on unconstitutional conditions during pretrial confinement) (Breyer, C.J.); *see generally* Cheryl Winokur, *Squalid Jails Grounds for Less Jail Time*, 149 N.J.L.J. 438, 452 (Aug. 4, 1997). Therefore, Miranda's motion for a downward departure based on the conditions of his pretrial confinement at the CCC will be denied.

While the record before me is far too sparse upon which to determine whether the conditions at the CCC are sufficiently deplorable to warrant a departure under the Guidelines, Miranda's description of conditions at the CCC, which is uncontradicted on the record before me, raises troublesome questions as to whether federal prisoners should be housed there. Accordingly, I am forwarding a copy of this opinion to the United States Marshal for this District to investigate conditions at the CCC and determine whether federal prisoners should continue to be incarcerated at that facility.

## II. Conclusion

Given a base offense level of 36 with adjustments of 3 points for acceptance of responsibility, 2 points for minimal role, and a further 2–point reduction pursuant to U.S.S.G. § 2D1.1(b)(4), *see infra*, for a total offense level of 29, and a criminal history category of I, the applicable guideline sentence range is 87 to 108 months. In light of the stipulations contained in the plea agreement relating to U.S.S.G § 5C1.2(2–4), 18 U.S.C. § 3553(f)(2–4), this Court's finding that the defendant does not have more than 1 criminal history point, and the stipulation by the Government on the record regarding the criteria required by U.S.S.G. § 5C1.2(5), 18 U.S.C. § 3553(f)(5), I conclude that Miranda is eligible to be sentenced under the provisions of U.S.S.G. § 5C1.2, *i.e.*, below the mandatory minimum sentence for 21 U.S.C. § 846, but within the applicable guideline range.