[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
OCT 25, 2006
THOMAS K. KAHN
CLERK

No. 06-10967
Non-Argument Calendar

_____

D. C. Docket No. 05-00026-CR-T-17-TBM

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

EUSTAQUIO YESQUEN AGUIRRE,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

**(October 25, 2006)**

Before CARNES, MARCUS and WILSON, Circuit Judges.

PER CURIAM:

Eustaquio Yesquen Aguirre[1] was one of eight individuals picked up by the United States Coast Guard after the boat he was on was found to contain some 2,647 kilograms of cocaine. Yesquen pleaded guilty to possessing with the intent to distribute, and conspiring to possess with the intent to distribute, five or more kilograms of cocaine while on board a vessel subject to the jurisdiction of the United States, all in violation of 46 U.S.C. App. § 1903(a), (g), and (j), and 21 U.S.C. § 960(b)(1)(B)(ii). He now appeals his 135-month sentence.

I.

Yesquen first argues that the district court erred in concluding that his role in the offense was not sufficiently minor to entitle him to a sentence reduction under United States Sentencing Guidelines Manual § 3B1.1 (Nov. 2004). Such a conclusion is a factual finding we will reverse only for clear error. United States v. Ryan, 289 F.3d 1339, 1348 (11th Cir. 2002).

The gist of Yesquen's argument on this point is that he was a mere sailor on the drug boat with no decision-making role or equity interest in its cargo. As such, Yesquen says, he was just a pawn in the overall scheme to distribute the drugs. Yesquen also complains that the denial of a minor role reduction is at odds with the Middle District of Florida's treatment of similar defendants in other drug courier

_____

[1] Throughout this opinion, we will refer to the defendant as "Yesquen" which is the name he uses in his brief to this Court.

cases and contravenes the Southern District of Florida's decision in United States

v. Dorvil, 784 F. Supp. 849 (S.D. Fla. 1991).[2]

U.S.S.G. § 3B1.2(b) entitles a defendant to a two-point decrease in his

offense level if the district court finds that the defendant was a "minor participant"

in the criminal activity. U.S.S.G. § 3B1.2(b). A defendant is a "minor participant"

if he is "less culpable than most other participants," but has a role that "could not

be described as minimal." U.S.S.G. § 3B1.2 cmt. n.5. To gauge a defendant's

eligibility for this minor-role reduction, the district court first determines "whether

a defendant's particular role was minor in relation to the relevant conduct

attributed to him in calculating his base offense level." Ryan, 289 F.3d at 1348

(citing United States v. DeVaron, 175 F.3d 930, 941 (11th Cir. 1999)). If so, and

only if so, the district court next determines whether the defendant's particular role

was minor in relation to other participants. Id. at 1348–49. These "other

participants," we have noted, are "only those participants who were involved in the

relevant conduct attributed to the defendant. The conduct of participants in any

larger criminal conspiracy is irrelevant." DeVaron, 175 F.3d at 944.

---

[2] Yesquen also argues that the district court erred in placing the burden on him to show that he was less culpable than the "average" participant. We need not address this argument at length because we have clearly stated that the defendant does in fact carry the burden of establishing his minor role; he must do so by a preponderance of the evidence. Ryan, 289 F.3d at 1348.

Yesquen's argument that he was a mere pawn in a larger drug distribution operation is misplaced. The relevant conduct attributed to him in calculating his base offense level was his possession (and conspiracy to possess) with the intent to distribute of some 2,647 kilograms of cocaine. Yesquen's sentence calculation does not reflect accountability under the Sentencing Guidelines for any other conduct related to a larger drug distribution scheme. Yesquen does not dispute—because he cannot dispute—that his role as a sailor was not minor in relation to the relevant conduct of possessing the cocaine aboard a drug boat whose mission was to deliver drugs for distribution. See id. at 948 (Carnes, J., concurring) ("Others may orchestrate or finance the crimes, furnish weapons or drugs, or profit more from the nefarious undertakings, but the drug courier . . . [is] the one[] who actually carr[ies] out [his] respective crime[]."). Because Yesquen fails to show that his role was minor in relation to the conduct reflected in the calculation of his base offense level, we need not address the second inquiry, namely whether Yesquen's role was minor in relation to the seven other individuals found on the drug boat with Yesquen. The district court's finding that Yesquen's role was not minor is not clearly erroneous.

Similarly misplaced are Yesquen's arguments concerning Dorvil and the Middle District of Florida's alleged practice of granting minor role reductions to

4

similarly situated defendants.  Even if Yesquen had substantiated this latter argument, which he did not, it would not matter.  As we have noted, a district court's determination of a defendant's role in an offense constitutes a factual finding.  Ryan, 289 F.3d at 1348.  We fail to see how findings as to defendants' roles in a fifteen-year-old case from the Southern District of Florida—or even in more recent cases from the Middle District of Florida—have any bearing on the propriety of a finding in Yesquen's case.  Assertions that Yesquen was treated differently from similarly situated defendants really address the reasonableness of his sentence, the subject to which we turn next.  See 18 U.S.C. § 3553(a) (requiring the district court to consider the need to avoid unwarranted sentence disparities).

II.

Yesquen argues that his sentence is unreasonable because the district court did not adequately consider his family's poverty, the poor health of his son and mother in Colombia, and his low chances of recidivism.  Yesquen further contends that his sentence was greater than necessary to achieve the purposes of sentencing and produced unwarranted sentencing disparities.

The Supreme Court's decision in United States v. Booker, 543 U.S. 220, 125 S. Ct. 738 (2005), requires us to review sentences for reasonableness in light of the

5

factors enumerated in 18 U.S.C. § 3553(a).[3]  Id. at 261, 125 S. Ct. at 765–66.

Although the district court must be guided by these factors, "nothing in Booker or

elsewhere requires the district court to state on the record that it has explicitly

considered each of the § 3553(a) factors or to discuss each of the § 3553(a)

factors."  United States v. Scott, 426 F.3d 1324, 1329 (11th Cir. 2005).  Indeed,

"an acknowledgment by the district court that it has considered the defendant's

arguments and the factors in section 3553(a) is sufficient under Booker."  United

States v. Talley, 431 F.3d 784, 786 (11th Cir. 2005). A defendant challenging his

sentence bears the burden of establishing the unreasonableness of that sentence in

light of the § 3553(a) factors, and when a sentence falls within the guidelines

range, we expect that sentence to be reasonable.  See id. at 788.

Yesquen has not met his burden of showing that his sentence was

unreasonable.  At sentencing, the district court (1) stated that it considered all the

sentencing factors listed in 18 U.S.C. § 3553(a); (2) considered Yesquen's

arguments regarding his family circumstances, but found that his sentence reflected

---

[3] Section 3553(a) provides that district courts must consider (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed [treatment]; (3) the kinds of sentences available; (4) the kinds of sentence and the sentencing range . . . ; (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (7) the need to provide restitution to any victims of the offense. 18 U.S.C. § 3553(a)(1)–(7).

the seriousness of his crime and the need to provide adequate deterrence; and (3) imposed a sentence at the low end of the guideline range. Moreover, by expressly stating that she was considering the § 3553(a) factors, the district court implicitly addressed Yesquen's arguments that his sentence was greater than necessary to achieve the purposes of sentencing and produced unwarranted sentencing disparities. We cannot say that Yesquen's sentence was unreasonably long.

**AFFIRMED.**

.