UNITED STATES of America,
Plaintiff–Appellee,

v.

Michael V. HELTON, Defendant–
Appellant.

No. 91–3909.

United States Court of Appeals,
Seventh Circuit.

Argued June 2, 1992.

Decided Sept. 21, 1992.

---

Frances C. Hulin, Asst. U.S. Atty. (argued), Danville, Ill., for U.S.

Michael K. Radloff (argued), Ryan, Cini, Bennett & Radloff, Mattoon, Ill., for Helton.

Before BAUER, Chief Judge, COFFEY and RIPPLE, Circuit Judges.

BAUER, Chief Judge.

On May 8, 1991, a ten-count indictment was returned against defendant-appellant Michael V. Helton. Counts one through eight charged Helton with mail fraud, in violation of 18 U.S.C. § 1341; count nine charged Helton with the use of a fictitious name in a scheme to defraud, in violation of 18 U.S.C. § 1342; and count ten charged Helton with bank fraud in violation of 18 U.S.C. § 1344.

Helton's crimes, which began in December 1989 and continued through October 1990, involved a scheme to defraud the Champaign County Seed Company ("Champaign") of St. Joseph, Illinois, and the First Trust and Savings Bank of Taylorville, Illinois (the "Bank"). Helton, a sales representative for Champaign, submitted fraudulent seed orders to his employer and thereby gained control of approximately 6,500 units of seed corn and soybeans, valued at approximately $227,000. Helton then told the Bank that the seed belonged to him, inducing the Bank to extend the term of a previous loan and to advance him an additional sum. In furtherance of his scheme, Helton opened two post office boxes and caused a number of documents to be mailed and delivered by the United States Postal Service.

After Helton's fraud was detected, Champaign recovered most of the seed. Champaign's seed loss was approximately $70,000. Adding the additional costs for labor and transportation to recover the stolen seed, Champaign's total loss from Helton's crimes was $73,793. The Bank lost $38,612.08 in principal and interest as the result of Helton's scheme.

On August 9, 1991, Helton entered a negotiated plea of guilty to counts one (mail fraud) and ten (bank fraud). His case was referred to the United States Probation Office for a presentence investigation. On December 6, 1991, the district court conducted a sentencing hearing. The court entered judgment against Helton and sen-

tenced him to twenty-one months imprisonment. In addition, the district court ordered Helton to pay $73,793 to Champaign and $38,612 to the Bank in restitution for his offenses. Counts two through nine were dismissed pursuant to Helton's plea agreement. Helton appealed.

On appeal, Helton claims that the district court committed three errors in sentencing: that the court incorrectly determined the amount of restitution; that the court erroneously considered certain depositions at the hearing; and that the court abused its discretion by refusing to depart downward from the sentencing range provided by the Sentencing Guidelines. None of these claims has merit. We consider each in turn.

Helton first argues that the district court erred in its determination of the amount of restitution. He maintains that the amount of restitution ordered was not adequately proved and that the court failed to consider his limited financial resources and earning ability. Helton concludes that the district court abused its discretion by ordering him to make restitution to the victims. *See* Defendant's Brief at 8.

■ We will reverse a district court's order of restitution if it is "not improbable" that the court failed to consider a mandatory factor set forth in 18 U.S.C. § 3664 ("§ 3664"). *United States v. McClellan,* 868 F.2d 210, 212 (7th Cir.1989). Conversely, we will sustain an order of restitution if the district court considered the requisite factors enunciated in the statute. Moreover, in a challenge to the district court's decision to order restitution or to the amount of restitution demanded, the defendant must show that the district court abused its discretion. *United States v. Arvanitis,* 902 F.2d 489, 496 (7th Cir.1990).

■ 18 U.S.C. § 3664(a) provides that the district court can order full restitution only after considering: (1) the amount of loss sustained by the victim; (2) the financial resources of the defendant; (3) the financial needs of the defendant and defendant's dependents; (4) the financial earning ability of the defendant's and the defendant's dependents; and (5) other such fac-

tors the court deems appropriate. *Arvanitis,* 902 F.2d at 498. Though strongly encouraged, an express statement of these factors, however, is not required. *United States v. Gomer,* 764 F.2d 1221, 1223 (7th Cir.1985).

■ There is no doubt that the district court considered the mandatory factors in determining its order of restitution. First, the court insisted on a full presentence investigation. Helton was given the opportunity to raise his objections to the presentence report, which were countered by the investigating probation officer. That presentence report contained ample information on Helton's financial prospects, including his family and marital ties, his mental, emotional, and physical condition, his education and vocational skills, his employment history, and his ability to pay. The report indicated, for instance, that Helton's wife is employed as a speech and language therapist by a special education school district. Shortly after the revelation of Helton's crimes in the instant case, she filed for divorce to protect her financial assets. Nevertheless, the report indicates that she remains supportive of Helton. Finally, the report fully analyzes Helton's financial status; the report concludes that Helton currently has a net worth of negative $20,917.62.

In addition, the district court heard testimony from Helton's relatives and considered the remarks of his counsel. Several relatives, for instance, described Helton as a hard-working individual; Helton himself told the court that in spite of his medical difficulties, he hoped to become a productive member of society again. With all this information, the district court made the following determination:

No fine is imposed upon the defendant because he doesn't have the financial ability to pay a fine. I note from the presentence report that he has a negative net worth of approaching $21,000 and a monthly cash flow of net about $71. Restitution is another matter. While he has no present capacity to make restitution, he has the possibility in the future

to make restitution. He has no unusual dependency, or number of people who are dependent on him, and in the event that he is gainfully employed upon his release from incarceration, if he can, he should make some effort at restitution.... I might add that I am a realist and I don't have any feeling that he will be able to make complete restitution, but he might be able to make some effort toward it.

Order on Final Disposition, Defendant's Appendix at 46–47.

These remarks demonstrate that the district court fully considered Helton's financial resources and the financial needs and earning ability of Helton and his dependents. Thus, we reject Helton's claim that the district court neglected to consider the factors set forth in § 3664.

■ Nor are we persuaded that the amount of restitution was incorrectly determined. Helton bases his argument that the restitution amount was inadequately proved on his assertion that the value of the seed at the time it was distributed to him equalled its value at the time it was recovered and sold one year later. Champaign, however, claimed that the value of the seed when recovered was less than when distributed. The probation officer obtained the loss figures directly from a Champaign employee. The district court in its discretion elected to rely on the figures provided by the probation officer. The court determined

> The reporting probation officer based his calculations on the information provided by John Whittick, again, of the Champaign County Seed Company, and, considering Mr. Helton's disregard for truthfulness in the past, there is no reason the court wouldn't believe the report submit-

ted by Mr. Whittick and would chose [sic] to believe Mr. Helton. The court accepts the report as presented by the probation officer.

*Id.* at 44. We see no abuse of discretion in the district court's determination.[1]

■ Helton next asserts that the district court erroneously considered certain depositions as evidence in aggravation at his sentencing hearing. These depositions were obtained from a civil action in the district court for the Central District of Illinois. The deposition testimony indicated that Helton wrongfully sold grain that belonged to his wife's family. The depositions were offered for the limited purpose of showing that Helton's illegal actions in the present case were not unique or aberrational.

On appeal, Helton acknowledges that the Federal Rules of Evidence do not apply to sentencing hearings. He even quotes Policy Statement 6A1.3 of the Sentencing Guidelines which states, "[T]he Court may consider relevant information without regard to its admissibility under the rules of evidence applicable at trial, provided that the information has sufficient indicia of reliability to support its probable accuracy." Helton argues that the depositions lacked sufficient indicia of reliability and, therefore, should not have been considered by the district court.

Sentencing Guideline § 1B1.4 broadly defines the information a court may consider in passing sentence. That section provides, "In determining the sentence to impose within the guideline range, or whether a departure from the guidelines is warranted, the court may consider, without limitation, any information concerning the background, character and conduct of the de-

---

1. In his brief, Helton raises a rather confusing claim. In one paragraph, he argues that the district court erred in ordering him to pay $38,612 to the Bank. Helton claims that he previously objected to that sum because the Bank already received from him $15,500. *See* Defendant's Brief at 7.

But that claim is directly at odds with Helton's own list of objections to the presentence report which explicitly put the amount of restitution owed at $38,612. In Objection # 4, Hel-

ton states, "The defendant agrees with the amount of the loss suffered by the [Bank] and points out that the figure is correct because the defendant has already made restitution payments in the amount of $15,500." With not even an attempt to explain why his claim on appeal directly opposes his own admission in the district court, we have no reason to believe that district court abused its discretion. Helton's puzzling claim is, therefore, rejected.

fendant, unless otherwise prohibited by law." Sentencing Guideline, § 1B1.4. Given this liberal direction, we have no doubt that the depositions in question possessed sufficient reliability to be considered by the sentencing court. After all, they were statements taken under oath in an adversarial proceeding in the district court.

Helton's claim that admission of the deposition testimony violated his Sixth Amendment right to confront witnesses against him also lacks merit. A convicted defendant does have the right to a fair sentencing process, and a sentence must be vacated if the defendant shows, first, that the information before the sentencing court was inaccurate, and second, that the sentencing court relied on the misinformation in passing sentence. *United States v. Allen*, 797 F.2d 1395, 1401 (7th Cir.) (quotations omitted), *cert. denied*, 479 U.S. 856, 107 S.Ct. 196, 93 L.Ed.2d 128 (1986). "In order to protect this right, the defendant must be given the opportunity to rebut hearsay evidence that he claims is erroneous, but 'this opportunity does not mean that the defendant can convert the sentencing proceeding into a full-scale evidentiary-type hearing.'" *Id.* (quoting *United States v. Cusenza*, 749 F.2d 473, 478 (7th Cir.1984)). In the instant case, Helton had every opportunity to rebut the impact of the deposition testimony. He never argued that the matters described in the depositions were false. We thus find no indication that the government presented any misinformation at the sentencing hearing or that the district court relied on erroneous material in passing sentence.

Finally, Helton argues that the district court abused its discretion by failing to depart downward from the sentencing range prescribed by the Sentencing Guidelines. He contends that because of his extraordinary physical impairment, the court's failure to depart downward was error. Guidelines Policy Statement § 5H1.4 provides that "an extraordinary physical impairment may be a reason to impose a sentence other than imprisonment." Nevertheless, Helton acknowledges that our cases make clear that we have no jurisdiction to review on the merits a decision not to depart downward. *See United States v. Franz*, 886 F.2d 973, 978 (7th Cir.1989).

Put simply, the district court's decision not to depart from the sentencing range determined by the Guidelines is discretionary and not subject to review. *United States v. Poff*, 926 F.2d 588, 590–91 (7th Cir.), *cert. denied*, —— U.S. ——, 112 S.Ct. 96, 116 L.Ed.2d 67 (1991). If the district court refused to depart because of an erroneous belief that it lacked the authority to do so, then we would have jurisdiction to review that legal conclusion. *Id.* In the instant case, there is no evidence to suggest that the district court was unaware of its authority to depart. We can only presume that its failure to depart was a discretionary decision based on the merits. The extensive evidence describing Helton's physical condition that the district court considered supports this presumption. Helton merely states that *Franz* and its progeny were decided wrongly. Without more, we see no reason to question that line of authority. Therefore, under *Franz* and *Poff*, we have no jurisdiction to review the district court's decision not to depart from Helton's prescribed sentencing range.

For the foregoing reasons, we AFFIRM Helton's sentence.