**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Syed Sami AHMAD, Defendant–Appellant.**

No. 92–3909.

United States Court of Appeals, Seventh Circuit.

Argued Aug. 4, 1993.

Decided Aug. 24, 1993.

**246**

Barry R. Elden, Asst. U.S. Atty., Kathleen T. Murdock, Asst. U.S. Atty. (argued), Crim. Receiving, Appellate Div., Chicago, IL, for plaintiff-appellee.

William T. Huyck (argued), Chicago, IL, for defendant-appellant.

Before FLAUM, EASTERBROOK, and ROVNER, Circuit Judges.

EASTERBROOK, Circuit Judge.

After receiving one college degree in Pakistan, Syed Sami Ahmad came to the United States to pursue another. He put himself through college with a combination of part-time jobs, aid from his family, and counterfeiting. Instead of passing bogus currency, Ahmad used bogus electronic components. Each cellular phone has a microchip that identifies the subscriber. Ahmad pirated telephone subscribers' identification numbers, had a friend reprogram three chips with these numbers, and inserted the chips in cellular phones so that calls would be billed to these account holders. Then he placed long distance calls for himself and his friends, charging the friends for his trouble. This scheme violated 18 U.S.C. § 1029(a)(1). Ahmad pleaded guilty and was sentenced to six months' imprisonment plus restitution of $39,663, the amount Ameritech and AT & T billed for the calls Ahmad completed. The propriety of restitution is the only issue on appeal.

Ahmad contends that the order is improper because the district judge did not comply with 18 U.S.C. § 3664(a), which provides: "The court, in determining whether to order restitution under section 3663 of this title and the amount of such restitution, shall consider the amount of the loss sustained by any victim as a result of the offense, the financial resources of the defendant, the financial needs and earning ability of the defendant and the defendant's dependents, and such other factors as the court deems appropriate." According to Ahmad, the district court did not "consider" his "financial resources ... financial needs and earning ability" because the court did not make express findings on the subject. A few courts of appeals require express findings. *United States v. Bailey*, 975 F.2d 1028, 1031 (4th Cir.1992); *United States v. Logar*, 975 F.2d 958, 961 (3d Cir.1992); *United States v. Hill*, 798 F.2d 402, 406–07 (10th Cir.1986). We do not, see *United States v. Helton*, 975 F.2d 430, 432 (7th Cir.1992); *United States v. Arvanitis*, 902 F.2d 489, 495–96 & n. 6 (7th Cir.1990); *United States v. Mahoney*, 859 F.2d 47, 50 (7th Cir.1988), and are not disposed to change sides. Findings simplify

review, no doubt, but the United States Code does not compel district judges to do whatever helps appellate judges. Congress distinguished consideration—that is, taking a subject into account—from formal findings. Restitution is the norm, and a judge who *declines* to order full restitution must make explicit findings. 18 U.S.C. § 3553(c). No comparable provision requires findings for ordering restitution. Section 3664(d) says: "The burden of demonstrating the financial resources of the defendant and the financial needs of the defendant and such defendant's dependents shall be on the defendant." Lack of findings coupled with an award of full restitution implies that the defendant has failed to carry this burden.

■ After reading the presentence report, the district judge required Ahmad to make full restitution. The presentence report contains details about Ahmad's financial resources, needs, and earning ability. Ahmad does not deny any of the pertinent details: he has one college degree, is progressing toward another, has worked in the past, and held an offer of another job. Although Ahmad's bank account may be empty, he has substantial human capital, which he can use to generate income and pay his debts—including his debt for cellular telephone service. Neither the district court's procedure nor Ahmad's circumstances supports a conclusion that the court failed to give his financial status the necessary attention. See *United States v. Boula,* 997 F.2d 263, 267–69 (7th Cir.1993); *United States v. Narvaez,* 995 F.2d 759 (7th Cir.1993); *United States v. McClellan,* 868 F.2d 210, 212–13 (7th Cir. 1989).

■ Nonetheless, one thing gives us pause. The district judge *did* make an explicit finding about Ahmad's financial capacity, albeit not in connection with restitution. The court declined to impose a fine, stating: "Based on the information contained in the PSI, the defendant appears unable to pay and is not likely to become able to pay any fine." How can Ahmad pay $40,000 in restitution if he is unable to pay *any* fine, even in installments, and is unlikely to become able to do so?

■ One possible answer would be that the probability of payment required to support an order of restitution might be lower than the probability required to support a fine. Recall that § 3664(a) does not require the district court to find that the defendant *can* pay; it requires only that the judge consider his ability to pay. Thus a person actually unable to pay may be directed to make restitution, provided there is some likelihood that he will acquire resources in the future. *McClellan,* 868 F.2d at 213; *United States v. House,* 808 F.2d 508, 510 (7th Cir. 1986); *United States v. Fountain,* 768 F.2d 790, 802–03, modified on other grounds, 777 F.2d 345 (7th Cir.1985). See *Logan,* 975 F.2d at 962 (collecting cases). The victim of a crime may obtain a civil judgment for the damage done. Inability to satisfy a judgment is no defense in civil litigation, and a civil judgment arising out of crime, like an award of restitution, may not be discharged in bankruptcy. Because the wrongdoer is legally obligated to make his victim whole whether or not the court includes restitution as part of the criminal judgment, the need to give *any* consideration to the defendant's resources is something of a puzzle. Differences in enforcement may account for the requirement that the judge consider ability to pay. A felon who does not make restitution goes back to prison, while a judgment debtor may take advantage of state laws that entitle him to keep some of his current earnings—for example, laws limiting the percentage of salary that is subject to garnishment. These laws reflect in part the interests of those dependent on the wage earner and moderate the rule forbidding discharge in bankruptcy of debts incurred via fraud. Moreover, collecting restitution is costly, and Congress may have decided that the expense of wringing the last penny out of an offender should be borne by the private rather than the public sector. Although § 3664(a) thus may serve some function, full restitution remains the norm, sparing victims the need to get a separate civil judgment. When there is doubt about ability to pay, the court should order full restitution. See also U.S.S.G. § 5E1.1(a), which makes restitution mandatory whenever the statute permits restitution.

■ Yet in this case the district judge did not express doubt. He flatly stated that Ahmad cannot pay a fine, any fine, now or tomorrow or in the foreseeable future. Perhaps the district judge was just trying to ensure that the victims have the first claim on Ahmad's resources, but the Sentencing Guidelines do this automatically. "If a defendant is ordered to make restitution and to pay a fine, the court shall order that any money paid by the defendant shall first be applied to satisfy the order of restitution." U.S.S.G. § 5E1.1(c). Priority for victims does not excuse a fine: "The court shall impose a fine in all cases, except where the defendant establishes that he is unable to pay and is not likely to become able to pay any fine." U.S.S.G. § 5E1.2(a). See *United States v. Ferrin*, 994 F.2d 658, 665–66 (9th Cir.1993), among cases emphasizing that "shall" makes the fine mandatory.

■ Ahmad's offense level was 10, for which the Guidelines specify a fine of $2,000 to $20,000. U.S.S.G. § 5E1.2(c)(3). Application Note 4 authorizes upward departure to twice the loss caused by the offense—in this case, $79,326. To the fine under § 5E1.2(c)(3) the district judge must add the costs of custody under § 5E1.2(i). *United States v. Turner*, 998 F.2d 534 (7th Cir.1993). Restitution is not a reason to waive the fine or depart downward, although the court may consider restitution when selecting a fine within the range. Among the seven factors the court must consider when selecting a fine is "any restitution or reparation that the defendant has made or is obligated to make". U.S.S.G. § 5E1.2(d)(4). And of course the court has the power to defer payment of the fine. Inability to pay today does not justify waiver of the fine, although it may justify a lower fine or the use of installments.

We are left with a puzzle. Can Ahmad pay, or not? Before the Guidelines district judges had substantial flexibility to choose a fine. Today that power has been curtailed, for fines as well as for imprisonment, so that when a judge finds that the defendant cannot pay a fine, he is not just using a euphemism for "in the exercise of my discretion, I have decided not to impose a fine." He is making a genuine finding of fact, with potential consequences for other aspects of the case. And that express finding of present and future inability to pay is inconsistent with the implied finding that Ahmad can make restitution.

■ An outcome of restitution but no fine might be reconciled by the different time frames: under U.S.S.G. § 5E1.2(g) installments for a fine "generally should not exceed twelve months, and shall not exceed the maximum term of probation authorized for the offense." Restitution, by contrast, may be awarded as a lump sum or structured in installments over five years. 18 U.S.C. § 3663(f). Thus a belief that a defendant will have some disposable income starting in three years would permit the court both to waive the fine and order restitution. But nothing in the district court's order in this case suggests that the timing of Ahmad's future income accounted for the difference. He has the potential to start earning immediately. (At the time of sentencing Ahmad had served four months and had two to go in an intermittent confinement program that allowed him to resume his studies.) In *Turner*, where the district court simultaneously found that the defendant could not pay any fine determined under § 5E1.2(c)(3) but could pay the additional fine under § 5E1.2(i), we remanded for further proceedings to clear up the inconsistency. The same approach is in order here. We suspected in *Turner* that the district judge did not really mean that the defendant could not pay *any* fine, even by installments, and have the same view here. If Ahmad really cannot pay anything toward a fine or restitution, why has he bothered to pursue this appeal? Still, this subject is one for the district court in the first instance. District judges imposing sentence should be conscious that the Guidelines regulate fines no less than imprisonment and impose a detailed sequence of considerations that we sketched in *Turner*.

■ One other aspect of the sentence calls for comment. The district court ordered Ahmad to pay restitution "in installments in such amounts at the discretion of the probation officer." Section 3663 does not permit a district judge to delegate to the

administrative staff the specification of a payment schedule, and in *Boula* we vacated an order that was materially identical to the one used here. How much the defendant owes, and the extent to which payment may be deferred, is something the judge must decide.

The kind of order entered in *Boula* and this case, which appears to be increasingly common, may reflect a misapprehension of the court's options under § 3663. If the order of restitution must permit payment by installments, it is tempting to leave the details to the probation officer who supervises the defendant after release. A judge may know that the defendant has the potential to earn money without being able to foresee how much he will earn, or when. The probation officer will learn these things in the course of supervision, making him best suited to fix a payment schedule. Yet § 3663 does not require courts to establish schedules of any kind. A judge "may", but need not, establish a schedule. 18 U.S.C. § 3663(f)(1); *House*, 808 F.2d at 511; *Boula*, 997 F.2d at 268–69. Far from requiring schedules of installments, the statute *limits* the judge's discretion to establish an installment plan. As we stressed in *House*, a judge may not give the defendant more than five years to pay. That is to say, the judge may not tell the victim that he must wait more than five years before payment, if the offender has the resources to pay sooner. Nothing in the statute encourages the judge to defer making the victim whole.

A judgment in civil litigation specifies the amount due without elaboration. If immediate payment proves impossible, accommodation will occur in the course of collection. A judgment creditor will garnish the judgment debtor's wages and collect incrementally, even though the court has not said a word about installments. Just so with criminal restitution. If the sentence specifies the amount of restitution, without elaboration, and makes payment a condition of probation or supervised release, the probation officer will assess the defendant's progress toward satisfaction of his debt, and if the defendant is not paying what he can the probation officer will ask the judge to revoke or alter the terms of release. Then the judge may make the order more specific or, if the defendant has not paid what he could in good faith, may send him back to prison. Everything works nicely without any effort to establish installments on the date of sentencing and without delegating a judicial function to the probation officer.

 The portion of the judgment concerning restitution is vacated, and the case is remanded for resentencing consistent with this opinion. As in *Turner*, the lack of a cross-appeal means that the court may not resolve the inconsistency by imposing a fine, but may resolve it by findings that would have supported a fine had they been made originally.