45 F.3d 428
NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
 UNITED STATES of America, Plaintiff-Appellee,
v.
Omar Lamont LEE, Defendant-Appellant.
 No. 93-5931.
 United States Court of Appeals, Fourth Circuit.
 Submitted July 26, 1994.
Decided Dec. 29, 1994.
 
 Appeal from the United States District Court for the Southern District of West Virginia, at Charleston. Charles H. Haden II, Chief District Judge. (CR-93-64).
 COUNSEL
 Hunt L. Charach, Federal Public Defender, C. Cooper Fulton, Assistant Federal Public Defender, Charleston, WV, for Appellant. Rebecca A. Betts, United States Attorney, R. Brandon Johnson, Assistant United States Attorney, Charleston, WV, for appellee.
 S.D.W.Va.
 AFFIRMED IN PART, VACATED IN PART, AND REMANDED.
 Before WILKINS, NIEMEYER, and MOTZ, Circuit Judges.
 OPINION
 PER CURIAM:
 
 
 1
 Omar Lamont Lee pled guilty to being a felon in possession of a firearm, 18 U.S.C.A. Sec. 922(g)(1) (West Supp.1994) and was sentenced to sixty-four months imprisonment. He appeals his sentence, alleging that the district court's use of the 1992 sentencing guidelines violated the Ex Post Facto Clause, and that the district court erred in applying guideline section 5G1.3(c)[1] rather than section 5G1.3(b). We affirm the district court's determination of Lee's sentence under the 1992 guidelines, but vacate the sentence and remand for resentencing under section 5G1.3(b).
 
 
 2
 Using a stolen gun, Lee shot his cousin at a party after a day and night of drinking and marijuana use. He eventually pled guilty to voluntary manslaughter in state court and was sentenced to one to five years imprisonment. In a statement to police shortly after the shooting, Lee said he had been playing with the gun, aiming it, and that it "just went off." The factual basis for Lee's plea to voluntary manslaughter was his own statement that, "I went to a party and I was probably drunk, and I was playing with a gun and I shot him."
 
 
 3
 The state judge who accepted Lee's plea noted that he had not admitted intentionally killing his cousin, but said he would accept the guilty plea because it was a compromise plea. Lee agreed that the government could produce some evidence that the killing was intentional, and that he knew he was giving up the right to assert the defense of accidental killing.
 
 
 4
 Lee was subsequently charged in federal court with being a felon in possession of a firearm. The probation officer computed his offense level at twenty-three, which included a four-level enhancement for use of the firearm in another felony under guideline section 2K2.1(b)(5) and a three-level adjustment for acceptance of responsibility under section 3E1.1. Lee's attorney objected to this computation and urged application of the 1990 guidelines to avoid an ex post facto problem. He argued that the 1990 guidelines would produce a lower base offense level if the district court applied the crossreference in section 2K2.1(c)(2) and determined that the other offense involved was involuntary manslaughter (guideline section 2A1.4, base offense level fourteen).
 
 
 5
 Alternatively, defense counsel argued that under the 1990 version of section 2K2.1 the district court should determine that the other offense in which the illegal firearm was used was neither voluntary manslaughter nor involuntary manslaughter as defined in 18 U.S.C. Sec. 1112 (1988).[2] He argued that the court should then apply section 2X5.1 to fashion an appropriate sentence under 18 U.S.C.A. Sec. 3553(b) (West Supp.1994) which would fall between the offense levels for voluntary and involuntary manslaughter.
 
 
 6
 At the federal sentencing hearing, the victim's mother asked to testify. She stated that she believed Lee had murdered her son. She said that Lee and her son were the best of friends "until pride, women and drugs got in the way."
 
 
 7
 Defense counsel then argued that the state court record contained no support for a finding that the killing was anything but accidental, and that it was not voluntary manslaughter as defined in 18 U.S.C. Sec. 1112. He further argued that because a stolen gun was used, the death did not occur while Lee was doing a lawful act, and therefore it was not involuntary manslaughter under Sec. 1112.
 
 
 8
 The district court decided that Lee's state offense was properly treated as voluntary manslaughter under federal law based on his guilty plea to that offense in state court. The court also found that the killing was voluntary manslaughter under Sec. 1112.
 
 
 9
 On appeal, Lee renews his contention that his cousin's killing was neither voluntary nor involuntary manslaughter and should have been sentenced under section guideline 2X5.1 and 18 U.S.C. Sec. 3553(b). He also argues that under the 1990 guidelines his offense level would have been lower than twenty-three (his offense level under the 1992 guidelines) regardless of whether the district court cross-referenced to the voluntary manslaughter guideline, section 2A1.3, or the involuntary manslaughter guideline, section 2A1.4. Lee calculates that a cross-reference to the voluntary manslaughter guideline would produce an offense level of twenty-two. This calculation assumes that Lee would receive the same three-level reduction for acceptance of responsibility under the 1990 guidelines that he received under the 1992 guidelines. Only a two-level reduction was available under the 1990 version of U.S.S.G. Sec. 3E1.1.
 
 
 10
 In his reply brief, Lee mounts an attack on the "one-book rule" which requires the Guidelines Manual used at sentencing to be applied in its entirety. United States Sentencing Commission, Guidelines Manual, Sec. 1B1.11(b)(2) (Nov.1992). He argues that the district court erred in applying the 1992 guidelines as a whole. This argument was not made in the district court and is reviewed under the plain error standard. United States v. Olano, 61 U.S.L.W. 4421 (U.S.1993).
 
 
 11
 All but one of the circuits which have considered a challenge to the one-book rule have held that only one version of the guidelines should be applied at sentencing. United States v. Boula, 997 F.2d 263, 266 (7th Cir.1993); United States v. Warren, 980 F.2d 1300, 1305-06 (9th Cir.1992), cert. denied, 62 U.S.L.W. 3319 (U.S.1993); United States v. Lenfesty, 923 F.2d 1293, 1299 (8th Cir.), cert. denied, 499 U.S. 968 (1991); United States v. Stephenson, 921 F.2d 438, 441 (2d Cir.1990); contra United States v. Seligsohn, 981 F.2d 1418, 1424-25 (3d Cir.1992) (district court should determine guideline version applicable to each count separately).
 
 
 12
 In determining Lee's offense level, the district court proceeded on the assumption that it would apply either the 1990 or the 1992 guideline manual in its entirety as directed by U.S.S.G. Sec. 1B1.11. This approach is supported by the weight of authority from other circuits as well. Lee did not suggest any other approach. Therefore, the district court did not commit plain error in this regard.
 
 
 13
 The government argues on appeal that the district court was foreclosed from considering the facts of Lee's state offense by this Court's decision in United States v. Wilson, 951 F.2d 586 (4th Cir.1991), cert. denied, 60 U.S.L.W. 3799 (U.S.1992). However, it is not clear that Wilson applies in this case. Wilson held that a legal rather than a factual inquiry should be made in determining whether a defendant has prior felony convictions which are crimes of violence, as defined in guideline section 4B1.2, which may make him a career offender. A factual inquiry is not appropriate because (1) the career offender provision focuses on a defendant's prior conviction, not his prior conduct; (2) the definition of "crime of violence" focuses on the elements of the crime, not the defendant's conduct; and (3) the application notes list a number of crimes which are designated as crimes of violence without regard to the particular conduct involved. Wilson, 951 F.2d at 588.
 
 
 14
 In contrast, Application Note 7 to section 2K2.1 provides that a felony offense "as used in subsection (b)(5), means any offense punishable by imprisonment for a term exceeding one year, whether or not a criminal charge was brought, or conviction obtained." The focus here is on the defendant's prior conduct, rather than on the fact of a prior conviction for a particular type of crime.
 
 
 15
 Nonetheless, because the district court did not find that a crossreference to the involuntary manslaughter guideline was appropriate, or that a sentence under 18 U.S.C. Sec. 3553(b) was necessary, Lee would not have had his offense level reduced below twenty-three even if the 1990 guidelines were applied. The district court did not err in determining that a cross-reference to the voluntary manslaughter guideline should be made under the 1990 guidelines because the victim's mother's testimony and Lee's negotiated plea to voluntary manslaughter in state court were evidence that the killing was intentional rather than accidental. Therefore, no ex post facto violation occurred.
 
 
 16
 Before sentence was imposed, defense counsel requested a sentence concurrent with Lee's state sentence under section 5G1.3(b) and asked that the court give Lee credit for the thirteen months he had served on his state sentence. See U.S.S.G. Sec. 5G1.3, comment. (n. 2). The district court determined without discussion that guideline section 5G1.3(c) applied and imposed a sentence consecutive to Lee's state sentence for voluntary manslaughter.
 
 
 17
 Guideline section 5G1.3(b) provides that when a defendant is subject to an undischarged term of imprisonment "and the undischarged term of imprisonment resulted from offense(s) that have been fully taken into account in the determination of the offense level for the instant offense, the sentence for the instant offense shall be imposed to run concurrently to the undischarged term of imprisonment."
 
 
 18
 Lee was serving an undischarged state sentence for shooting his cousin at the time of his federal sentencing. He received a four-level enhancement for the same conduct. The conduct resulting in the undischarged term of imprisonment was thus fully taken into account in determining Lee's offense level. Therefore, the district court should have applied guideline section 5G1.3(b) in sentencing Lee. See United States v. Washington, 17 F.3d 230, 234 (8th Cir.1994) (concurrent sentences required under U.S.S.G. Sec. 5G1.3(b) for Sec. 922(g) conviction and state conviction for robbery committed with illegally possessed firearm), petition for cert. filed June 14, 1994 (No. 93-9542); United States v. Hicks, 4 F.3d 1358, 1365-67 (6th Cir.1993) (concurrent sentences for Sec. 922(g) conviction and state conviction for aggravated assault committed with illegally possessed firearm). Therefore, the district court erred in imposing a consecutive sentence pursuant to section 5G1.3(c).
 
 
 19
 Accordingly, we affirm the district court's determination of the guideline sentence. However, we vacate the sentence and remand with instructions to impose sentence under guideline section 5G1.3(b). We deny Lee's motion for oral argument because the facts and legal contentions are adequately presented in the materials before the Court and argument would not aid the decisional process.
 
 
 20
 AFFIRMED IN PART, VACATED IN PART, AND REMANDED.
 
 
 
 [1]
 United States Sentencing Commission, Guidelines Manual (Nov.1992)
 
 
 [2]
 Manslaughter is defined in Sec. 1112(a) as the unlawful killing of a human being in one of two ways. Voluntary manslaughter occurs "[u]pon a sudden quarrel or heat of passion." Involuntary manslaughter occurs "[i]n the commission of an unlawful act not amounting to a felony, or in the commission in an unlawful manner, or without due caution and circumspection, of a lawful act which might produce death."