**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Kim Tae SUNG, Defendant–Appellant.**

No. 94–1529.

United States Court of Appeals,
Seventh Circuit.

Argued Feb. 10, 1995.

Decided March 24, 1995.

---

his supplier could make them—including a profusion of ® and ™ symbols. (Soft Sheen has been a registered trademark since 1967, Wave Nouveau since 1989. The bottles also included a stylized SS that has been a registered trademark since 1985.) Kim obtained 20,600 spray bottle caps that were excellent imitations of the originals and 20,000 shipping cartons bearing the Soft Sheen trademarks. Each carton could hold 12 bottles. Customers started complaining to Soft Sheen about the quality of the goods Kim sold them (he passed himself off as an authorized Soft Sheen wholesaler), and the scam came to light. His total sales were never ascertained but could not have exceeded 17,600 bottles. The difference between this quantity and the implication, from the number of cartons ordered, that Kim planned to operate on a larger scale, set the stage for a dispute about sentencing. The district court treated Kim as accountable for 240,000 filled counterfeit bottles (20,000 cartons × 12 bottles per carton) and sentenced him to 48 months' imprisonment; Kim insists that he is answerable for his actual sales only.

Barry Rand Elden, Asst. U.S. Atty., Juanita S. Temple (argued), Office of U.S. Atty., Crim. Receiving, Appellate Div., Chicago, IL, for plaintiff-appellee.

William H. Theis (argued), Chicago, IL, for defendant-appellant.

Before FLAUM and EASTERBROOK, Circuit Judges, and CRABB, District Judge.*

EASTERBROOK, Circuit Judge.

Kim Tae Sung is a counterfeiter, not of currency but of commodities. He approximated the product, and duplicated the packaging, of Soft Sheen® Wave Nouveau® Finishing Mist, one of many items in Soft Sheen Products' hair care line. Kim bought 1,100 gallons of a liquid that he deemed close enough to the real McCoy to pass in the trade; this was enough to fill 17,600 eight-ounce bottles. He secured 68,000 bottles that were as close to the original as he and

First, however, we tackle a dispute about the elements of the offense. Soft Sheen Products sometimes used the ™ symbol on its bottles when it should have applied a ® symbol. Kim asserted at trial that the absence of the ® following all occurrences of registered trademarks required the prosecution to establish that he had actual knowledge that the marks were registered. The statute in question, 18 U.S.C. § 2320(a), provides that "[w]hoever intentionally traffics or attempts to traffic in goods or services and knowingly uses a counterfeit mark on or in connection with such goods or services" commits a crime. Kim intentionally sold the bottles bearing counterfeit marks. Kim knew that the marks were on the bottles, caps, and boxes. Does proof that a person "knowingly use[d] a counterfeit mark" entail a demonstration that he knew the mark to be someone else's registered trademark? Section 2320(d)(1)(A)(ii) says no, defining a counterfeit mark as a spurious mark "that is

* Hon. Barbara B. Crabb, Chief Judge of the United States District Court for the Western District of Wisconsin, sitting by designation.

identical with, or substantially indistinguishable from, a mark registered for those goods or services on the principal register in the United States Patent and Trademark Office and in use, whether or not the defendant knew such mark was so registered". This definition puts on the vendor the duty to inquire into the status of a mark. *United States v. Baker*, 807 F.2d 427 (5th Cir.1986); *United States v. Gantos*, 817 F.2d 41, 42–43 (8th Cir.1987); *United States v. Nam Ping Hon*, 904 F.2d 803, 806 (2d Cir.1990). It does not necessarily render knowledge irrelevant, however. Section 2320(c) provides that "[a]ll defenses, affirmative defenses, and limitations on remedies that would be applicable in an action under the Lanham Act shall be applicable in a prosecution under this section." If lack of knowledge of the mark's registered status is a defense under the Lanham Act, then it is a defense to a criminal prosecution—one on which by virtue of § 2320(d)(1)(A)(ii) the defendant bears the burden of persuasion, but a defense nonetheless.

■ Kim pointed to 15 U.S.C. § 1111, a part of the Lanham Act, to support his argument that lack of knowledge of a mark's registered status is at least an affirmative defense. Yet § 1111 does not create a defense; it is a limitation on remedies. The statute requires holders of registered trademarks to use the ® symbol or language such as "Reg. U.S. Pat. and Tm. Off." and continues: "in any suit for infringement under this chapter by such a registrant failing to give such notice of registration, no profits and no damages shall be recovered under the provisions of this chapter unless the defendant had actual notice of the registration." Omission of the ® symbol and lack of knowledge combined do not foreclose equitable remedies (including the confiscation of the defendant's stocks of products) and therefore cannot be called a "defense" under the Lanham Act. *Cf. Louis Vuitton, S.A. v. Pun Yang Lee*, 875 F.2d 584, 587 (7th Cir.1989) (remarking that knowledge of registration is not an essential ingredient in a civil Lanham Act case). The judge therefore did not need to instruct the jury on this line of defense.

■ Section 1111 expressly restricts monetary remedies, however, and § 2320(c) applies to criminal proceedings remedial limitations as well as substantive defenses. Restitution in a criminal case is the counterpart to damages in civil litigation. The district judge ordered Kim to pay $2,160 in restitution in installments "to be determined by the probation office." This order is doubly flawed. First, as a form of money damages, restitution payable to the trademark owner is proper only if the goods contained the proper notice or the infringer had actual knowledge of the registration. The district judge did not make findings on either of these subjects and must do so in order to support any order of restitution. Second, when a court permits the defendant to make restitution by installments, the judge must specify the schedule; this task may not be left to the staff. E.g., *United States v. Ahmad*, 2 F.3d 245, 248–49 (7th Cir.1993); *United States v. Boula*, 997 F.2d 263, 269 (7th Cir.1993). *Boula* disapproved an identical provision by the district judge who presided in this case. The order of restitution must be reconsidered.

■ As for the sentence of imprisonment: U.S.S.G. § 2B5.3 establishes a base offense level of six for criminal trademark infringement, with a single specific offense characteristic. Section 2B5.3(b)(1) provides that "[i]f the retail value of the infringing items exceeded $2,000, increase by the corresponding number of levels from the table in § 2F1.1 (Fraud and Deceit)." The retail price of the goods Kim counterfeited is $4 per bottle, and he concedes that the total retail value exceeds $2,000. Off we go to § 2F1.1. But what is the total "retail value of the infringing items"? Kim believes that this means items *sold;* the 1,100 gallons of liquid set an upper bound of 17,600 bottles (and thus $70,-400) on infringing sales. According to the table, a loss between $70,000 and $120,000 leads to six extra offense levels. The prosecution replied that the 20,000 boxes would hold a total of 240,000 bottles, fetching $960,-000 at retail. The district court, referring to § 2F1.1 Application Note 7, used the $960,-000 figure, which translated to 11 levels. Note 7 says: "Consistent with the provisions of § 2X1.1 (Attempt, Solicitation or Conspiracy), if an intended loss that the defendant

was attempting to inflict can be determined, this figure will be used if it is greater than the actual loss." The district court explained that by acquiring 20,000 shipping cartons Kim showed that he intended to inflict a loss of at least $960,000. Kim replies that § 2B5.3(b)(1) refers to the *table* in § 2F1.1, not to all of that section's notes, and that only actual loss therefore counts in trademark infringement cases. The difference between the 6 levels on Kim's calculation and the 11 levels on the prosecution's can mean as much as two years in prison.

Trying to separate the table in § 2F1.1 from that section's notes would be a bootless exercise. The table specifies a number of offense levels for each range of "loss". "Loss" is not a self-defining term; the Sentencing Commission's notes add vital details. The difficulty is not so much the use of the Application Notes as it is the disjunction between "loss" in the table and the reference in § 2B5.3(b)(1) to the "retail value of the infringing items". The shipping cartons doubtless infringed; they bore counterfeit trademarks. The "retail value" of *the cartons* was negligible, however; if as a result of Application Note 7 the retail value of each carton counts toward the "loss" whether or not Kim sold the carton, the total still would not exceed $120,000. The critical step in the district court's analysis is the imputation of a $4 retail value to each empty slot in a carton. That step is questionable independently of any dispute about the propriety of using Application Note 7. Did Kim have any reasonable expectation of being able to sell that much counterfeit Soft Sheen® Wave Nouveau® Finishing Mist? Maybe he bought 20,000 cartons, fewer bottles, and still less liquid, because these were standard lots in the industry. Buying a producer's ordinary run of boxes does not imply intent to use them all, let alone the ability to do so. In civil trademark law a litigant must establish that bottles or boxes could have been filled and sold; it is not proper to leap from an inventory of unfilled bottles to an award of damages. *Zazú Designs v. L'Oréal, S.A.*, 979 F.2d 499, 505–06 (7th Cir.1992).

■ Sentencing under the Guidelines is not a duplicate of the calculation of damages in civil proceedings; the Guidelines often use rough-and-ready calculations to curtail complexity. *United States v. Marlatt*, 24 F.3d 1005 (7th Cir.1994); *United States v. Harvey*, 996 F.2d 919 (7th Cir.1993). Application Note 7 points to one of the rough cuts: Guideline 2X1.1 provides that in attempt cases the court computes the offense level as if for a completed crime, including all "intended offense conduct that can be established with reasonable certainty," § 2X1.1(a), then subtracts three levels unless "the defendant completed all the acts the defendant believed necessary for successful completion of the substantive offense or the circumstances demonstrate that the defendant was about to complete all such acts but for apprehension or interruption by some similar event beyond the defendant's control." U.S.S.G. § 2X1.1(b)(1). Kim completed the crime of counterfeiting only with respect to the goods he actually sold. Acquisition of the bottles and boxes was a substantial step toward achievement of additional offenses under § 2320 and therefore was an attempt, but Kim had not "completed all the acts [he] believed necessary for successful completion of the substantive offense" with respect to any sales beyond 17,600 bottles.

The prosecutor argues on appeal that the district court implicitly found that the sale of 240,000 bottles is "intended offense conduct that can be established with reasonable certainty". That is an implausible reading of the court's statements, if only because the prosecutor did not rely on § 2X1.1 in the district court. The judge did not discuss the evidence in terms of "reasonable certainty". And even if the judge implied how he would treat the criteria of § 2X1.1(a), he did not say anything bearing on the considerations in § 2X1.1(b)(1).

To recapitulate: § 2B5.3 tells the court to impose a sentence based on the retail value of infringing products; § 2F1.1 does not answer the question whether the infringing boxes should be treated as if they represented the retail value of the completed product or only the value of the boxes themselves; to answer that question one visits § 2X1.1 and learns that everything depends on how close the defendant came to completing additional

crimes. By purchasing the boxes, Kim took a step toward the sale of 240,000 counterfeit bottles. That attempt is enough to count the retail value of the whole 240,000 bottles, *if* intent to sell 240,000 bottles has been established with "reasonable certainty", subject to a deduction of 3 levels under § 2X1.1(b)(1) unless Kim "was about to complete all [necessary] acts but for apprehension". It is not clear to us that "but for apprehension" Kim had any hope of reaping a million dollars from counterfeit hair products, but the district court should make the essential inquiries in the first instance.

The judgment of conviction is affirmed. The sentence (including the award of restitution) is vacated, and the case is remanded for further proceedings consistent with this opinion.